Alyssa M. Bruno (PA Id. #321345)
abruno@abrunolaw.com
A. BRUNO LAW
P.O. Box 468
Easton, PA 18044
Telephone: (610) 258-4003

*Attorney for Plaintiff Bradcliffe LLC*

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADCLIFFE LLC, a Pennsylvania Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM GRANT & SONS, INC., a New Jersey Corporation; RED TETTEMER, INC., a Pennsylvania Corporation; MODOP, LLC, a Delaware Limited Liability Company; QUAKER CITY MERCANTILE, INC., a Pennsylvania Corporation; and DOES 1-10.<br><br>Defendants. | Case No. 2:25-cv-6511<br><br>**COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501 *et seq.*; CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT; AND ACCOUNTING.**<br><br>**<u>Jury Trial Demanded</u>** |

Plaintiff Bradcliffe LLC ("**Bradcliffe**") is owned by Donald A. McCloskey ("**McCloskey**"), an independent singer-songwriter based in Philadelphia, PA.  This case is about the theft of original musical works owned by Plaintiff that were used by Defendants William Grant & Sons, Inc. ("**William Grant**"), Red Tettemer, Inc. ("**Red Tettemer**"), ModOp, LLC ("**Mod Op**"), and Quaker City Mercantile, Inc. ("**Quaker City Mercantile**") in a global advertising campaign promoting William Grant's "Tullamore D.E.W." brand of Irish whiskey products without Plaintiff's consent, authorization, or any payment being made to it.  The unauthorized advertisements featuring derivatives of Plaintiff's musical works were produced by Defendants for various marketing mediums, including radio, broadcast TV, streaming, YouTube,

online, and social media and were then performed and distributed by Defendants via these mediums throughout the United States and globally for several years. Notably, the Tullamore D.E.W. audiovisual commercial entitled "SO WHATDYA D.E.W.?" featuring an unauthorized derivative of Plaintiff's song, "*Tullamore Tullamore Tullamore Dew,*" has run during various professional sporting events throughout the years, including during NHL games, MLB games, NBA games, and even ***during the 2025 Super Bowl game***. Moreover, as of today's date, the wildly successful :30 second YouTube video of the "SO WHATDYA D.E.W.?" commercial posted on Defendant William Grant's "Tullamore D.E.W. Official" YouTube account on March 15, 2024 has over **39 million views** and another :30 second YouTube video of the commercial posted by Defendant William Grant a year earlier, on March 14, 2023, has over **34 million views**. Additionally, the :15 second and :48 second spots of the ad currently have over 2.7 million and 143,000 views, respectively.

The infringing "SO WHATDYA D.E.W.?" commercials featuring Plaintiff's song have been so successful that countless comments generated by fans have been posted on YouTube, Reddit, and elsewhere, with users noting:

- "This ad is always on but it's so catchy you love it."

- "Honestly this a jam."

- "A YouTube ad that I don't skip through. Now here I am I actually went out of my way and looked it up."

- "Best YouTube ad song ever."

- "This is an absolute banger."

- "Today, on St. Patty's, I drank Tullamore for the first time. And it was really good. This ad got me. I was telling my friends 'have you seen the ad with the Tullamore song!? It's awesome.' Well done Tullamore marketing team."

- "Best ad ever."

- "One in a million commercial where people went to search it after it played during any video to see it again."

- "The best commercial made yet."

- "Talk about a catchy tune."

- "Honestly this song went hard."

- "This is so good I love it 😍😍 "

- "This is honestly the only add [sic] I'm happy shows up on here.  You'll never catch me skipping or complaining.  Might try to recreate this song at the local bar."

- "Always stuck in my head.  I sing it out loud at work everyday [sic] lol."

- "This is dope I've listen [sic] to this like 20 times in the last 10 minutes.  Edit: **Like it is so good I have never like[d] a commercial song but dang it's good.**"

- "I need a full length version of this song."

- "Best add [sic] I've seen in a long time. Concise, to the point, and a great song."

- "The only ad that I don't skip."

- "This is the actual best song."

- "This is an ad for the ages here."

- "Now this is the kind of ad I like.  Relevant, witty, and actually sounds good."

- "This is one of the best advertisements I've seen in a long time.  It actually has a very good energy which exudes onto us causing a ripple effect.  The joyfulness and vibes always makes me want to be a better person.  Ty for putting thought and positive energies into this commercial 🙏❤️ "

- "We need a full song on this one."

3

- "How does an ad have such a fire song."

- "This is probably the first ever ad that catches my attention, great job Tullamore Dew!"

- "Thanks for the joy."

- "Just saw the ad, and now I want a full version for Spotify, YouTube, and anywhere else."

- "Why does this still live in my head 2 years later?"

- "I can't get this song out of my head."[1]

It is undeniable that the "SO WHATDYA D.E.W.?" commercials featuring Plaintiff's song are culturally relevant commercial hits for the Tullamore D.E.W. brand that are memorable and engaging. As a result of these infringing advertisements as well as other unauthorized derivatives featuring Plaintiff's works, Defendant William Grant has profited from a significant increase in sales of its Tullamore D.E.W. Irish whiskey products as well as an increase in its overall brand recognition and consumer goodwill. Additionally, the advertising agencies that created the ads, namely Defendants Red Tettemer, Mod Op, and Quaker City Mercantile, have likewise profited from the illegal exploitation of Plaintiff's musical works. Despite receiving detailed Cease-and-Desist Demand letters from Plaintiff in August 2025 concerning these claims, Defendants have continued to run the infringing "SO WHATDYA D.E.W.?" commercials as well as the other infringing commercials online, on the radio, via broadcast TV, and through various streaming platforms. Just the other day, Plaintiff heard an unauthorized Tullamore D.E.W. radio spot featuring his song on 94.1 WIP sports talk radio channel in Philadelphia.

---

[1] See YouTube comments left on :15 version, :30 versions, and :48 version of the Tullamore D.E.W. "SO WHATDYA D.E.W.?" ads at https://www.youtube.com/watch?v=gNfyS6P3XIU, https://www.youtube.com/watch?v=ek5QztZxbKY, https://www.youtube.com/watch?v=-7FuKzh0FMk, and https://www.youtube.com/watch?v=i4X7XSL9fSU.

Plaintiff Bradcliffe has been harmed by Defendants' past and continuing infringements and hereby prays to this Court for relief based on the following:

## JURISDICTION AND VENUE

1.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*

2.      This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a).

3.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b)(2) and 1400(a) because this is the judicial district in which a substantial part of the events and omissions giving rise to the claims occurred, and the Defendants and their agents may be found in this judicial district, as set forth below.

## PARTIES

4.      Plaintiff Bradcliffe is a Pennsylvania limited liability company with its principal place of business located at 537 Martins Corner Road, Coatesville, PA 19320. Bradcliffe is owned by Donald A. McCloskey, a singer-songwriter who resides in greater Philadelphia, PA. McCloskey is known for his eclectic and unique style of songwriting, and he has a particular affinity for and deep knowledge of traditional Irish folk music. As the copyright claimant to the musical works at issue in this case, Bradcliffe is entitled to institute and maintain this action under 17 U.S.C. § 501(b).

5.      Upon information and belief, Defendant William Grant & Sons, Inc. is a New Jersey corporation with a principal place of business located at 130 Fieldcrest Ave., Edison, NJ 08837.

6.      Upon information and belief, Defendant Red Tettemer, Inc. is a Pennsylvania corporation with a principal place of business located at 2400 Market Street, Suite 102, Philadelphia, PA 19103.

7.      Upon information and belief, Defendant ModOp, LLC is a Delaware limited liability company with a place of business located at 2400 Market Street, Suite 102, Philadelphia, PA 19103.

8.      Upon information and belief, Defendant Quaker City Mercantile, Inc. is a Pennsylvania corporation with a principal place of business located at 234 Market St., Floor 3, Philadelphia, PA 19106.

9.      Upon information and belief, Defendants Red Tettemer and Mod Op are doing business in and with the Commonwealth of Pennsylvania and residents of this judicial district in connection with their branding and advertising consultancy services.  Specifically, Defendants Red Tettemer and Mod Op offer their branding and advertising consultancy services to companies within this judicial district, and those services take place within this judicial district. In 2024, Defendant Mod Op acquired Defendant Red Tettemer.  Both Red Tettemer and Mod Op have offices located in this judicial district in Philadelphia, PA.

Upon information and belief, Defendant Red Tettemer provided advertising consultancy services to Defendant William Grant in this judicial district concerning the Tullamore D.E.W. commercials at issue in this litigation and has profited from the production, performance, and distribution of these commercials in this judicial district.  Moreover, upon information and belief, Defendant Mod Op provided services to Defendant William Grant in this judicial district concerning the Tullamore D.E.W. commercials at issue in this lawsuit and has profited from the production, performance, and distribution of these commercials in this judicial district. Specifically, the unauthorized Tullamore D.E.W. radio advertisements and audiovisual advertisements featuring unauthorized derivatives of Plaintiff's musical works were performed and distributed by Defendants Red Tettemer and Mod Op on radio stations and TV channels in this judicial district, including on 94.1 WIP sports talk radio in Philadelphia.  Additionally, upon information and belief, the unauthorized online and TV broadcast and streaming advertisements

produced by Defendant Red Tettemer, including the "Tullamore D.E.W. Anthem" (:30 versions and :15 version) and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World" (:30 version) audiovisual commercials, were also performed and distributed by Defendants Red Tettemer and Mod Op in this judicial district.

10.    Upon information and belief, Quaker City Mercantile is doing business in and with the Commonwealth of Pennsylvania and residents of this judicial district in connection with its branding and advertising consultancy services, which are offered to companies within this judicial district and take place within this judicial district.  Quaker City Mercantile's office is located in Philadelphia, PA.  Upon information and belief, Quaker City Mercantile provided services to William Grant in this judicial district concerning the Tullamore D.E.W. commercials at issue in this lawsuit and has profited from the production, performance, and distribution of these commercials.  Specifically, the unauthorized Tullamore D.E.W. radio advertisements and audiovisual advertisements featuring unauthorized derivatives of Plaintiff's musical works were performed and distributed by Quaker City Mercantile on radio stations and TV channels in this judicial district, including on 94.1 WIP sports talk radio in Philadelphia.  Additionally, upon information and belief, the unauthorized online and TV broadcast and streaming advertisements, including the "SO WHATDYA D.E.W.?" (:15 version, :30 versions, and :48 version) audiovisual commercials produced by Quaker City Mercantile were also performed and distributed by Quaker City Mercantile within this judicial district.

11.    Upon information and belief, Defendant William Grant is doing business in and with the Commonwealth of Pennsylvania and residents of this judicial district in connection with the advertising, promotion, sales, and distribution of its alcoholic beverages, including its Tullamore D.E.W. brand of Irish whiskey products, to consumers and establishments located in this judicial district.  Moreover, Defendant William Grant contracted with Philadelphia-based advertising agencies, Defendants Red Tettemer and Quaker City Mercantile, to create the

advertisements at issue in this lawsuit, and the development of those advertisements took place in this judicial district. Upon information and belief, the unauthorized radio advertisements featuring unauthorized derivatives of Plaintiff's musical works were performed and distributed by Defendant William Grant on radio stations in this judicial district, including on WIP 94.1 sports talk radio in Philadelphia. Moreover, the audiovisual commercials featuring unauthorized derivatives of Plaintiff's musical works, including the "SO WHATDYA D.E.W.?" commercials, were broadcast on TV stations located in this judicial district, including in Philadelphia. The audiovisual commercials featuring unauthorized derivatives of Plaintiff's musical works were also streamed by consumers located in this judicial district. Finally, the various unauthorized online advertisements produced by Defendant Red Tettemer and Quaker City Mercantile were performed and distributed by Defendant William Grant in this judicial district.

12.    Upon information and belief, Defendants Does 1-10 ("**Doe Defendants**") (altogether with Red Tettemer, Mod Op, Quaker City Mercantile, and William Grant, hereinafter collectively referred to as "**Defendants**"), are other parties not yet identified who have infringed the asserted copyrights, have contributed to the infringement of those copyrights, or have engaged in one or more of the unlawful practices alleged herein. The true names, whether corporate, individual, or otherwise, of Doe Defendants are presently unknown to Plaintiff Bradcliffe, which therefore sues said Doe Defendants by such fictitious names and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

## FACTUAL ALLEGATIONS

13.    Plaintiff Bradcliffe is the copyright claimant to the musical works entitled "*Tullamore Tullamore Tullamore Dew*" (U.S. Copyright Office Registration No. PAu 4-209-459; Supplemental Registration No. PAu 4-252-393), attached hereto as <u>Exhibit A</u> and

"*Tullamore Tullamore Tullamore Dew Version #2*" (U.S. Copyright Office Registration No. PA 2-496-119), attached hereto as <u>Exhibit B</u> (collectively "**Bradcliffe Musical Works**").

14.    Plaintiff is also the copyright claimant to the sound recordings embodying the Bradcliffe Musical Works.  Accordingly, Plaintiff Bradcliffe has standing to maintain this action under 17 U.S.C. § 501(b).

15.    McCloskey, the owner of Plaintiff Bradcliffe, was a W-9 independent contractor at the advertising consultancy agency, Defendant Red Tettemer, in 2021 and 2022.  During that time, McCloskey worked on various advertising projects for different clients of Red Tettemer as a copywriter.  Sometime in 2022, McCloskey was asked by Defendant Red Tettemer to be part of a team developing ideas to pitch to Defendant William Grant concerning a potential social media advertising campaign for its Tullamore D.E.W. line of Irish whiskey products.

16.    In 2022, Plaintiff Bradcliffe authored the musical work entitled "*Tullamore Tullamore Tullamore Dew*" and fixed it in a sound recording recorded on McCloskey's iPhone. See <u>Ex. A</u>.  McCloskey then shared the "*Tullamore Tullamore Tullamore Dew*" musical work with Defendant Red Tettemer to be included in the pitch to Defendant William Grant to potentially be used in a social media advertising campaign for its Tullamore D.E.W. brand.

17.    Thereafter, McCloskey was told by Defendant Red Tettemer that Defendant William Grant liked the song and thought it had potential to be used in an official campaign. Plaintiff Bradcliffe subsequently authored a derivative version of the "*Tullamore Tullamore Tullamore Dew*" musical work and titled it "*Tullamore Tullamore Tullamore Dew Version #2.*" See <u>Ex. B</u>.  Plaintiff recorded this second musical work at a recording studio and then provided it to Defendant Red Tettemer to be provided to Defendant William Grant to potentially be used in an advertising campaign for its Tullamore D.E.W. brand.

18.     Ultimately, Defendant William Grant relayed to Defendant Red Tettemer that it liked the concept of having Plaintiff's song as set forth in the Bradcliffe Musical Works serve as the central focus in an advertising campaign for its Tullamore D.E.W. line of whiskey products.

19.     Upon information and belief, at some point in 2022, Defendant Red Tettemer entered into a contract with Defendant William Grant concerning its advertising and consultancy services concerning the Tullamore D.E.W. advertising campaign.

20.     As part of the contract with Defendant William Grant, Defendant Red Tettemer produced and developed numerous audio-only and audiovisual commercials featuring derivative versions of the Bradcliffe Musical Works.  Specifically, Defendant Red Tettemer produced and developed the audiovisual commercials entitled "Tullamore D.E.W. Anthem" (:30 versions and :15 version) and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World" (:30 version), and other derivatives thereof (collectively "**Unauthorized Red Tettemer/William Grant Derivative Works**"), all of which contain adaptations of the Bradcliffe Musical Works. Screenshots of the posted videos of the "Tullamore D.E.W. Anthem" (:30 versions and :15 version) and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World" (:30 version) audiovisual commercials are attached hereto as Exhibit C.

21.     McCloskey worked as an independent contractor with Defendant Red Tettemer to develop the Unauthorized Red Tettemer/William Grant Derivative Works with the understanding that if any of the commercials were ultimately chosen by Defendant William Grant and/or Defendant Red Tettemer to run as actual public-facing commercial advertisements, Plaintiff would be compensated for the use of his copyrights in the Bradcliffe Musical Works.

22.     At no point in time did McCloskey or Plaintiff Bradcliffe assign or license any rights to the Bradcliffe Musical Works to Defendants Red Tettemer, William Grant, or any of the other Defendants so that the works could be distributed, copied, performed, or adapted by Defendants.

23.     Rather, at all times that McCloskey worked with Defendant Red Tettemer as an independent contractor on the Tullamore D.E.W. project, he believed that if the Unauthorized Red Tettemer/William Grant Derivative Works or any derivatives thereof were to be run as a commercial campaign, Defendants Red Tettemer and William Grant would follow the lawful and typical protocol of entering into either an assignment agreement or a licensing agreement with his legal entity, Plaintiff Bradcliffe, the owner of the copyrights to the Bradcliffe Musical Works, so that the advertisements could be lawfully run, and Plaintiff would be compensated accordingly for the use of its intellectual property.

24.     All of the Unauthorized Red Tettemer/William Grant Derivative Works are copies of the Bradcliffe Musical Works as they contain essentially identical protectable elements to Plaintiff's original musical compositions.

25.     For example, tellingly, the Unauthorized Red Tettemer/William Grant Derivative Works and Bradcliffe Musical Works contain the same x-y-x hook phrase structure in the first verse of each song (i.e. three one-measure phrases followed by a one-measure refrain or "hook" repeating the Tullamore D.E.W. name in a specific way).  The lyrics of the hook in the first verse of each song, which read: "… Tul-la-more, Tul-la-more, Tul-la-more DEW," are also the same in all of the works.  See musical notation of the first verse for each relevant iteration below.

**Bradcliffe Musical Work #1 – *"Tullamore Tullamore Tullamore Dew"***



**Bradcliffe Musical Work #2 – *"Tullamore Tullamore Tullamore Dew Version #2"***







**Unauthorized Red Tettemer/William Grant Derivative Work –**

***"Tullamore D.E.W. – Unwavering Whiskey in a Crazy World"* (:30 version)**



26.    Additionally, the melodies, rhythms, pitch sequences, instrumentation, phrase structures, and harmonies of the Unauthorized Red Tettemer/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

27.    Further, the overall selection and arrangement of elements in the Unauthorized Red Tettemer/William Grant Derivative Works is strikingly similar to Plaintiff's creative selection and arrangement of the protected elements in its Bradcliffe Musical Works.  The total concept and feel of the works is the same.

28.    Thus, the Unauthorized Red Tettemer/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

29.    The Unauthorized Red Tettemer/William Grant Derivative Works are works that transformed, recast, and/or adapted the Bradcliffe Musical Works and therefore constitute derivative works.

30.    Neither McCloskey nor Plaintiff consented to, authorized, or licensed the Bradcliffe Musical Works to Defendants to be adapted, used, reproduced, performed, or distributed commercially through the Unauthorized Red Tettemer/William Grant Derivative Works or any other works.

31.    Defendants Red Tettemer and William Grant had access to the Bradcliffe Musical Works because McCloskey provided the sound recordings containing the Bradcliffe Musical Works to Defendant Red Tettemer to be used as part of the pitch to Defendant William Grant concerning the potential advertising campaign project for its Tullamore D.E.W. line of Irish whiskey products.  Upon information and belief, Defendant Red Tettemer provided access to those works to Defendant William Grant through that pitch process or thereafter.

32.    In August 2022, prior to any public performance or distribution of the Unauthorized Red Tettemer/William Grant Derivative Works taking place, McCloskey emailed Steve O'Connell ("**O'Connell**") and Joe Mosca ("**Mosca**") of Defendant Red Tettemer and

requested that a synchronization license, which is required for the lawful use of a musical work in an audiovisual work, be entered into concerning the Bradcliffe Musical Works so that the Unauthorized Red Tettemer/William Grant Derivative Works could be legally distributed and performed by Defendants Red Tettemer and William Grant, and Plaintiff could be compensated accordingly. O'Connell and Mosca brushed off McCloskey's requests, and no synchronization license, licensing agreement, or assignment agreement concerning the Bradcliffe Musical Works was ever entered into between McCloskey or Plaintiff and any of the Defendants.

33.    Thereafter, Plaintiff was told by an employee of Defendant Red Tettemer that it had lost the William Grant account and that no use of the Unauthorized Red Tettemer/William Grant Derivative Works containing the Bradcliffe Musical Works would be taking place.

34.    Nevertheless, despite not entering into any licensing or assignment agreement concerning the Bradcliffe Musical Works, Defendants Red Tettemer and William Grant went on to copy, store, reproduce, perform, distribute, and otherwise exploit the Bradcliffe Musical Works amongst themselves and the derivative Unauthorized Red Tettemer/William Grant Derivative Works on the radio, online, and elsewhere.

35.    Notably, several published advertising trade articles that, upon information and belief, were placed by Defendant Red Tettemer and Defendant William Grant to promote the collaboration between the brands include website links through which the Unauthorized Red Tettemer/William Grant Derivative Works are performed. The trade articles publicizing Defendant Red Tettemer's work with Defendant William Grant and featuring the Unauthorized Red Tettemer/William Grant Derivative Works are attached hereto as Exhibit D.

36.    Significantly, in these articles, "Don McCloskey" is listed as the author of the music in the Tullamore D.E.W. advertisements, separate from Defendant Red Tettemer, thereby reflecting his role as an independent contractor of Defendant Red Tettemer rather than an employee and the fact that he is the sole author of the music featured in the campaign. See id.

37.     Upon information and belief, the Unauthorized Red Tettemer/William Grant Derivative Works were also eventually commercially distributed and performed by Defendant Mod Op through various marketing mediums, including radio, online, and social media, after it acquired Defendant Red Tettemer.  Defendants Red Tettemer and/or William Grant provided Defendant Mod Op with access to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works.

38.     Upon information and belief, at some point in time, Defendant Red Tettemer entered into a contract with Defendant William Grant through which it purported to transfer and/or assign the copyrights to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works to Defendant William Grant, despite the fact that Defendant Red Tettemer did not own the copyrights to these works.

39.     As of the date of the filing of this Complaint and despite Defendants receiving detailed Cease-and-Desist Demand Letters from Plaintiff in August 2025, the Unauthorized Red Tettemer/William Grant Derivative Works are still being commercially reproduced, distributed, and performed by Defendants online, via the radio, and elsewhere without Plaintiff's consent, authorization, or any payment being made to it.

40.     To the extent Defendants commercially exploited the Unauthorized Red Tettemer/William Grant Derivative Works or any other copies of the Bradcliffe Musical Works more than three years before the filing of this lawsuit, Plaintiff did not know and had no reason to know of such exploitation(s) at the time they originally occurred.

41.     At some point following the campaign with Defendant Red Tettemer, Defendant William Grant entered into a contract with Defendant Quaker City Mercantile, another advertising and branding consultancy agency based in Philadelphia, concerning the creation and production of another advertising campaign for Defendant William Grant's Tullamore D.E.W. line of Irish whiskey products.

42.     Neither McCloskey nor Plaintiff had any knowledge that Defendant William Grant entered into a contract with Defendant Quaker City Mercantile concerning the production of an advertising campaign using the Bradcliffe Musical Works or any derivatives thereof.

43.     Thereafter, without McCloskey or Plaintiff's knowledge, consent, or authorization, Defendants Quaker City Mercantile and William Grant went on to produce several audio-only and audiovisual commercials featuring unauthorized derivative versions of the Bradcliffe Musical Works, including the audiovisual commercials entitled "SO WHATDYA D.E.W.?" (:15 version, :30 versions, and :48 version), and other derivatives thereof (collectively "**Unauthorized Quaker City Mercantile/William Grant Derivative Works**").  Screenshots of the posted YouTube videos of the "SO WHATDYA D.E.W.?" audiovisual commercials (:15 version, :30 versions (posted on March 14, 2023 and March 15, 2024, respectively), and :48 version) are attached hereto as <u>Exhibit E</u>.

44.     All of the Unauthorized Quaker City Mercantile/William Grant Derivative Works are copies of the Bradcliffe Musical Works as they contain essentially identical protectable elements to Plaintiff's original musical compositions.

45.     For example, tellingly, the Unauthorized Quaker City Mercantile/William Grant Derivative Works and Bradcliffe Musical Works contain the same x-y-x hook phrase structure in the first verse of each song (i.e. three one-measure phrases followed by a one-measure refrain or "hook" repeating the Tullamore D.E.W. name in a specific way).  The lyrics of the hook in the first verse of each song, which read: "[We/Ya] Tul-la-more, Tul-la-more, Tul-la-more DEW," are also the same in all of the relevant works.  See musical notation of the first verse for each relevant iteration below.

**Bradcliffe Musical Work #1 – *"Tullamore Tullamore Tullamore Dew"***





**Bradcliffe Musical Work #2 – *"Tullamore Tullamore Tullamore Dew Version #2"***







**Unauthorized Quaker City Mercantile/William Grant Derivative Work –**
***"SO WHATDYA D.E.W.?"* (:30 version)**







**Unauthorized Quaker City Mercantile/William Grant Derivative Work –**
*"SO WHATDYA D.E.W.?"* (:48 version)

46.    Notably, in some of the other iterations of hooks in both Plaintiff's "*Tullamore Tullamore Tullamore Dew Version #2*" musical work and Defendants' "SO WHATDYA D.E.W.?" audiovisual commercials, the same words, "whad-da-ya-do?" precede the hook, "Tul-la-more, Tul-la-more, Tul-la-more DEW," and then the song ends with a final exclamation of "Hey!"  See relevant musical notations below.



**Bradcliffe Musical Work #2 – "*Tullamore Tullamore Tullamore Dew Version #2*"**



**Unauthorized Quaker City Mercantile/William Grant Derivative Work –**
*"SO WHATDYA D.E.W.?"* (:48 version)

47.    Additionally, the melodies, rhythms, pitch sequences, instrumentation, phrase structures, and harmonies of the Unauthorized Quaker City Mercantile/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

48.    The overall selection and arrangement of elements in the Unauthorized Quaker City Mercantile/William Grant Derivative Works is strikingly similar to Plaintiff's creative selection and arrangement of the protected elements in its Bradcliffe Musical Works.  The total concept and feel of the works is the same.

49.    Thus, the Unauthorized Quaker City Mercantile/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

50.    The Unauthorized Quaker City Mercantile/William Grant Derivative Works are works that transformed, recast, and/or adapted the Bradcliffe Musical Works and therefore constitute derivative works.

51.    Upon information and belief, Defendant Quaker City Mercantile had access to the Bradcliffe Musical Works because Defendant William Grant forwarded the sound recordings containing the Bradcliffe Musical Works or copies thereof to it or otherwise provided it with access to the works.

52.    Upon information and belief, Defendant Quaker City Mercantile had access to the Unauthorized Red Tettemer/William Grant Derivative Works because Defendant William Grant forwarded them or copies of them to Defendant Quaker City Mercantile or otherwise provided it with access to the works.

53.    Neither McCloskey nor Plaintiff licensed or assigned the Bradcliffe Musical Works to Defendants Quaker City Mercantile or William Grant.

54.    Neither McCloskey nor Plaintiff consented to, authorized, or licensed the Bradcliffe Musical Works to Defendants to be adapted, used, reproduced, performed, or

distributed commercially through the Unauthorized Quaker City Mercantile/William Grant Derivative Works or any other works.

55.    Nevertheless, despite not entering into any licensing or assignment agreement concerning the Bradcliffe Musical Works, Defendants Quaker City Mercantile and William Grant went on to copy, store, reproduce, perform, distribute, and otherwise commercially exploit the derivative Unauthorized Quaker City Mercantile/William Grant Derivative Works on the radio, TV, online, and elsewhere.

56.    As of the date of the filing of this Complaint and despite Defendants receiving detailed Cease-and-Desist Demand Letters from Plaintiff in August 2025, the Unauthorized Quaker City Mercantile/William Grant Derivative Works are still being commercially reproduced, distributed, and performed by Defendants online, via the radio and TV, social media, and elsewhere without Plaintiff's consent, authorization, or any payment being made to it.

57.    To the extent Defendants commercially exploited the Unauthorized Quaker City Mercantile/William Grant Derivative Works or any other copies of the Bradcliffe Musical Works more than three years before the filing of this lawsuit, Plaintiff did not know and had no reason to know of such exploitation(s) at the time they originally occurred.

58.    In August 2025, counsel for Plaintiff, Alyssa M. Bruno, Esq., sent detailed Cease-and-Desist Demand Letters to Defendants concerning the aforementioned claims.  See Cease-and-Desist Demand Letters to Defendants Red Tettemer/Mod Op, William Grant, and Quaker City Mercantile, attached hereto as Exhibits F, G, H.

59.    All of the Defendants responded to Plaintiff through counsel concerning the Cease-and-Desist Demand Letters, yet they continue to exploit Plaintiff's works commercially to this day.

60.    In response to Plaintiff's Cease-and-Desist Demand Letter, Defendant Quaker City Mercantile removed a link on its website in which the infringing "SO WHATDYA

D.E.W.?" YouTube ad was being performed. None of the other Defendants have ceased any aspect of their infringing conduct.

61.     Plaintiff has been harmed by Defendants' various infringements.

## COUNT 1: DIRECT COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501
### *As to All Defendants*

62.     Plaintiff repeats and alleges paragraphs 1 through 61 hereof, as if fully set forth herein in their entirety.

63.     Upon information and belief, Defendants, and each of them, copied, stored, performed, distributed, and/or otherwise exploited copies of the Bradcliffe Musical Works for commercial purposes without a license, authorization, or consent from Plaintiff and without any payment to it.

64.     Specifically, Defendants Red Tettemer, Mod Op, and William Grant produced, copied, stored, performed, distributed, and/or otherwise exploited the Unauthorized Red Tettemer/William Grant Derivative Works, which are unauthorized copies of the Bradcliffe Musical Works, on the radio, online, social media, and elsewhere.

65.     All of the Unauthorized Red Tettemer/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

66.     Moreover, Defendants Quaker City Mercantile and William Grant produced, copied, stored, performed, distributed, and/or otherwise exploited the Unauthorized Quaker City Mercantile/William Grant Derivative Works, which are unauthorized copies of the Bradcliffe Musical Works, on TV, radio, online, social media, streaming, and elsewhere.

67.     All of the Unauthorized Quaker City Mercantile/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

68.     Defendants had access to the Bradcliffe Musical Works or copies thereof.

69.     Due to Defendants' acts of copyright infringement, Plaintiff has suffered actual damages in the form of lost royalties and other damages in an amount to be established at trial.

70.     Due to Defendants' acts of copyright infringement, Defendants, and each of them, have obtained profits, both direct and indirect profits, they would not have realized but for their infringement of the copyrights in the Bradcliffe Musical Works.  As such, Plaintiff is entitled to the disgorgement of Defendants' profits attributable to Defendants' infringement of the copyrights in the Bradcliffe Musical Works in an amount to be established at trial.

## COUNT 2: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
### *As to All Defendants*

71.     Plaintiff repeats and alleges paragraphs 1 through 70 hereof, as if fully set forth herein in their entirety.

72.     Upon information and belief, Defendant Red Tettemer is contributorily liable for the infringements of Defendants William Grant, Mod Op, and Quaker City Mercantile as alleged herein as it knowingly induced, caused, participated in, aided and abetted in, and profited from their illegal production, reproduction, performance, distribution, and exploitation of the infringing Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works.

73.     Specifically, upon information and belief, Defendant Red Tettemer was an active participant in producing the infringing Unauthorized Red Tettemer/William Grant Derivative Works and then oversaw whether and how those infringing commercials were then publicly distributed, performed, and exploited by Defendant William Grant.

74.     Moreover, upon information and belief, Defendant Red Tettemer knew that it did not own the copyrights to the Bradcliffe Musical Works and did not have Plaintiff's consent or authorization to exploit these works commercially, yet it transferred these works to Defendant William Grant who then transferred them to Defendant Quaker City Mercantile to be used and/or

copied for the development, reproduction, performance, distribution, and commercial exploitation of the infringing Unauthorized Quaker City Mercantile/William Grant Derivative Works.

75.     Additionally, upon information and belief, Defendant Red Tettemer also knowingly induced, caused, participated in, aided and abetted in, and profited from the illegal reproduction, performance, distribution, and exploitation of the infringing Unauthorized Red Tettemer/William Grant Derivative Works by Defendant Mod Op because it transferred the works to Defendant Mod Op or otherwise knowingly allowed the works to be exploited by Defendant Mod Op for future commercial exploitation despite knowing that it did not own the copyrights to the underlying Bradcliffe Musical Works or have Plaintiff's consent or authorization for the commercial exploitation of derivatives of those works.

76.     Critically, Defendant Red Tettemer is also contributorily liable for the continued infringements of Defendants Mod Op, William Grant, and Quaker City Mercantile as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant Red Tettemer knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

77.     Furthermore, upon information and belief, Defendant Red Tettemer is vicariously liable for the infringements by Defendant William Grant alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendant William Grant concerning these works as it

actively produced them on behalf of Defendant William Grant and then had the right and ability to oversee how and where these works were publicly distributed, performed, and exploited by Defendant William Grant. Defendant Red Tettemer had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendant William Grant as it was compensated by Defendant William Grant for the production and subsequent exploitation of these works.

78. Upon information and belief, Defendant Red Tettemer is vicariously liable for the infringements by Defendant Mod Op alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendant Mod Op concerning these works as it oversaw how and where these works were publicly distributed, performed, and exploited by Defendant Mod Op. Defendant Red Tettemer had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendant Mod Op because upon information and belief, Defendant Red Tettemer was compensated as a result of Defendant Mod Op's exploitation of these works.

79. Upon information and belief, Defendant Red Tettemer is vicariously liable for the infringements by Defendant William Grant alleged herein concerning the Unauthorized Quaker City Mercantile/William Grant Derivative Works because Defendant Red Tettemer had the ability to supervise and control the infringing conduct of Defendant William Grant as it entered into a purported transfer of rights agreement with Defendant William Grant concerning the copyrights to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works, which were then used by Defendants William Grant and Quaker City Mercantile to create the Unauthorized Quaker City Mercantile/William Grant Derivative Works, even though it did not own the copyrights to these works. Upon information and belief, Defendant Red Tettemer received payment from Defendant William Grant for the purported

transfer of the rights to the Bradcliffe Musical Works and/or the Unauthorized Red

Tettemer/William Grant Derivative Works; thus, it had a direct financial interest in Defendant

William Grant's infringement.  Upon information and belief, Defendant Red Tettemer also

directly profited from the exploitation of the Unauthorized Quaker City Mercantile/William

Grant Derivative Works by Defendant William Grant.

80.     Upon information and belief, Defendant William Grant is contributorily liable for

the infringements of Defendants Red Tettemer, Mod Op, and Quaker City Mercantile as alleged

herein as it knowingly induced, caused, participated in, aided and abetted in, and profited from

their illegal production, reproduction, performance, distribution, and exploitation of the

infringing Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized

Quaker City Mercantile/William Grant Derivative Works.

81.     Specifically, upon information and belief, Defendant William Grant was an active

participant in producing the infringing Unauthorized Red Tettemer/William Grant Derivative

Works and then oversaw whether and how those infringing commercials were then publicly

distributed, performed, and exploited by Defendant Red Tettemer and subsequently, Defendant

Mod Op.

82.     Moreover, upon information and belief, Defendant William Grant knew that it did

not own the copyrights to the Bradcliffe Musical Works and/or the Unauthorized Red

Tettemer/William Grant Derivative Works and did not have Plaintiff's consent or authorization

to exploit these works commercially, yet it transferred these works to Defendant Quaker City

Mercantile to be used and/or copied for the development, reproduction, performance,

distribution, and commercial exploitation of the infringing Unauthorized Quaker City

Mercantile/William Grant Derivative Works.  Upon information and belief, Defendant William

Grant was also an active participant in the production of the Unauthorized Quaker City

Mercantile/William Grant Derivative Works and then oversaw the subsequent distribution, performance, and exploitation of these works by Defendant Quaker City Mercantile.

83.    Critically, Defendant William Grant is also contributorily liable for the continued infringements of Defendants Red Tettemer, Mod Op, and Quaker City Mercantile as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant William Grant knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

84.    Furthermore, upon information and belief, Defendant William Grant is vicariously liable for the infringements by Defendants Red Tettemer and Mod Op alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendants Red Tettemer and Mod Op concerning these works as it was actively engaged in the creation and production of these commercials and then had the right and ability to oversee how and where they were publicly distributed, performed, and exploited by Defendants Red Tettemer and Mod Op.  Defendant William Grant had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendants Red Tettemer and Mod Op as it benefited through increased brand awareness and sales of its Tullamore D.E.W. Irish whiskey products as a result of the promotion, performance, and distribution of the Unauthorized Red Tettemer/William Grant Derivative Works by them.

85.    Upon information and belief, Defendant William Grant is vicariously liable for the infringements by Quaker City Mercantile alleged herein concerning the Unauthorized Quaker City Mercantile/William Grant Derivative Works because Defendant William Grant had the right and ability to supervise and control the infringing conduct of Defendant Quaker City Mercantile as it hired Defendant Quaker City Mercantile to create the Unauthorized Quaker City Mercantile/William Grant Derivative Works even though it did not own the copyrights to the Bradcliffe Musical Works that are the underlying works from which the Unauthorized Quaker City Mercantile/William Grant Derivative Works are derived and then played an active role in the creation and production of the commercials by Defendant Quaker City Mercantile. Defendant William Grant then had the right and ability to see how and where the Unauthorized Quaker City Mercantile/William Grant Derivative Works were publicly distributed, performed, and exploited by Defendant Quaker City Mercantile.  Defendant William Grant had a direct financial interest in the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendant Quaker City Mercantile as it benefited through increased brand awareness and sales of its Tullamore D.E.W. Irish whiskey products as a result of the promotion, performance, and distribution of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by it.

86.    Upon information and belief, Defendant Mod Op is contributorily liable for the continued infringements of Defendants Red Tettemer, William Grant, and Quaker City Mercantile as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant Mod Op knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red

Tetteter/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

87.    Upon information and belief, Defendant Mod Op is also vicariously liable for the infringements by Defendants Red Tettemer and William Grant alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendants Red Tettemer and William Grant concerning these works as it had the right and ability to oversee how and where they were publicly distributed, performed, and exploited by Defendants Red Tettemer and William Grant. Defendant Mod Op also had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendants Red Tettemer and William Grant as it profited from the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by them.

88.    Upon information and belief, Defendant Quaker City Mercantile is contributorily liable for the continued infringements of Defendants Red Tettemer, Mod Op, and William Grant as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant Quaker City Mercantile knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

89.    Upon information and belief, Defendant Quaker City Mercantile is also vicariously liable for the infringements by Defendant William Grant alleged herein concerning the Unauthorized Quaker City Mercantile/William Grant Derivative Works because it had the

right and ability to control the infringing conduct by Defendant William Grant concerning these works as it had the right and ability to oversee how and where they were publicly distributed, performed, and exploited by Defendant William Grant. Defendant Quaker City Mercantile also had a direct financial interest in the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendant William Grant as it profited from the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by it.

## COUNT 3: ACCOUNTING
*As to All Defendants*

90.     Plaintiff repeats and alleges paragraphs 1 through 89 hereof, as if fully set forth herein in their entirety.

91.     Defendants have derived and/or are in possession of significant revenue, profits, and other benefits thereon stemming from their unauthorized and illegal use, storage, production, reproduction, distribution, performance, and/or otherwise commercial exploitation of the Bradcliffe Musical Works and derivative works of the Bradcliffe Musical Works in the form of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works.

92.     Plaintiff is entitled to a full and accurate accounting of all revenues generated by Defendants in connection with their use, storage, production, reproduction, distribution, performance, and/or otherwise commercial exploitation of any and all copies or derivatives of the Bradcliffe Musical Works, including the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works.

93.     Specifically, Plaintiff is entitled to a full and accurate accounting of all revenues generated by Defendants Red Tettemer, Mod Op, and Quaker City Mercantile concerning their production of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works and their subsequent

reproduction, distribution, performance, and commercial exploitation of these works on the radio, TV, online, social media, streaming, and elsewhere, including any and all advertising share revenues, such as YouTube ad revenues, or bonuses generated or received by them as a result of the creation and/or exploitation of these works.

94.     As to Defendant William Grant, Plaintiff is entitled to a full and accurate accounting of all revenues generated by it in connection with all sales of Tullamore D.E.W. alcohol products or other Tullamore D.E.W. products during the time that the Unauthorized Red Tettemer/William Grant Derivative Works and/or Unauthorized Quaker City Mercantile/William Grant Derivative Works have been publicly distributed, performed, and/or commercially exploited via radio, TV, broadcasting, online, social media, streaming, or elsewhere.

95.     Plaintiff is also entitled to a full and accurate accounting of all other revenues generated by Defendant William Grant, including advertising share revenues, such as YouTube ad revenues, generated or received by it in connection with the public distribution, performance, reproduction, and exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works via radio, TV, broadcasting, online, social media, streaming, and elsewhere.

96.     The amount of money due to Plaintiff from Defendants resulting from their infringements is in excess of One Hundred Fifty Thousand Dollars ($150,000), but the precise amount is currently unknown to Plaintiff and cannot be reasonably ascertained without a full and complete accounting of Defendants' relevant books and records.  Due to the widespread nature of the infringing acts committed by Defendants at issue, it is not possible for Plaintiff to ascertain a fixed sum that is currently owed to it unless a full and accurate accounting of all revenues generated from the aforementioned infringing acts is performed.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

a. That Defendants, each of them, their respective agents, and anyone working in concert with Defendants and/or their agents, be permanently enjoined from copying, storing, performing, distributing, and/or otherwise exploiting the Bradcliffe Musical Works, Unauthorized Red Tettemer/William Grant Derivative Works, and Unauthorized Quaker City Mercantile/William Grant Derivative Works, or any derivatives thereof, in a manner that infringes the copyrights in the Bradcliffe Musical Works;

b. That Plaintiff be awarded all of Defendants' profits, both direct and indirect profits, and all of Plaintiff's actual damages and losses attributable to Defendants' infringements, the exact sum to be proven at the time of trial;

c. That Defendants Red Tettemer, Mod Op, and Quaker City Mercantile shall be required to provide an accounting of the total revenue generated by them concerning their creation/production of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works and their subsequent reproduction, distribution, performance, and commercial exploitation of these works on the radio, TV, broadcasting, online, social media, streaming, and elsewhere, including any and all advertising share revenues generated, such as YouTube ad revenues generated, or bonuses generated or received by them as a result of the creation and/or exploitation of these works.

d. That Defendant William Grant shall be required to provide an accounting of the total revenue generated by it in connection with all sales of Tullamore D.E.W. alcohol products or other Tullamore D.E.W. products during the time that the

Unauthorized Red Tettemer/William Grant Derivative Works and/or

Unauthorized Quaker City Mercantile/William Grant Derivative Works have been

publicly distributed, performed, and/or commercially exploited via radio, TV,

broadcasting, online, social media, streaming, and elsewhere.

e.  That Defendant William Grant shall be required to provide an accounting of the

total revenue generated by it concerning its reproduction, distribution,

performance, and commercial exploitation of the Unauthorized Red

Tettemer/William Grant Derivative Works and Unauthorized Quaker City

Mercantile/William Grant Derivative Works on the radio, TV, broadcasting,

online, social media, streaming, and elsewhere, including any and all advertising

share revenues generated, such as YouTube ad revenues generated, or other

revenue generated or received by it as a result of the exploitation of these works.

f.  That a constructive trust shall be imposed upon Defendants regarding such

amounts and any other revenues or proceeds realized by Defendants, and each of

them, through their infringement of Plaintiff's copyrights in the Bradcliffe

Musical Works;

g.  To the extent available, that Plaintiff be awarded its costs and fees under 17

U.S.C. § 505;

h.  That Plaintiff be awarded pre- and post-judgment interest as allowed by law;

i.  That Plaintiff be awarded such further legal and equitable relief as the Court

deems proper.

## <u>**JURY DEMAND**</u>

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: November 19, 2025            By:     *<u>/s/ Alyssa M. Bruno</u>*
                                             Alyssa M. Bruno, Esq.
                                             A. BRUNO LAW
                                             *Attorney for Plaintiff Bradcliffe LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November 2025, a true and correct copy of the foregoing **PLAINTIFF BRADCLIFFE LLC COMPLAINT** was filed electronically with the United States District Court for the Eastern District of Pennsylvania through the Court's CM/ECF system. All parties may access this filing through that system. A copy of this filing will be sent to Defendants at the emails and addresses listed below:

**Shona Tennant, Esq.** (Shona.Tennant@wgrant.com)
William Grant & Sons, Inc.
Senior Counsel US & Canada
+1 (646) 661-8201 (phone)
*Counsel for Defendant William Grant & Sons, Inc.*

**Darren Spielman, Esq.** (dspielman@conceptlaw.com)
The Concept Law Group
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, FL 33309
(754) 300-1500 (phone)
(754) 300-1501 (fax)
*Counsel for Defendants Red Tettemer, Inc. and ModOp, LLC*

**Alexis D. Isztwan, Esq.** (AIsztwan@sogtlaw.com)
**Michael B. Dubin, Esq.** (MDubin@sogtlaw.com)
Semanoff Ormsby Greenberg & Torchia, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006
(215) 887-5314 (phone)
(215) 884-3500 (fax)
*Counsel for Defendant Quaker City Mercantile, Inc.*

**A. BRUNO LAW**

By:    */s/ Alyssa M. Bruno*

Dated: November 19, 2025        Alyssa M. Bruno, Esq.
*Attorney for Plaintiff Bradcliffe LLC*