Alyssa M. Bruno (PA Id. #321345)
abruno@abrunolaw.com
A. BRUNO LAW
P.O. Box 468
Easton, PA 18044
Telephone: (610) 258-4003

*Attorney for Plaintiff Bradcliffe LLC
and Donald A. McCloskey*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADCLIFFE LLC, a Pennsylvania Limited Liability Company, and DONALD A. MCCLOSKEY, an individual based in Pennsylvania.<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM GRANT & SONS, INC., a New Jersey Corporation; WILLIAM GRANT & SONS AMERICAS, LLC, a Florida Limited Liability Company; WILLIAM GRANT & SONS US DISTILLERS LLC, a Delaware Limited Liability Company; WILLIAM GRANT & SONS USA CORP., a Delaware Corporation; WILLIAM GRANT & SONS, LTD., a Scotland Limited Company; WILLIAM GRANT & SONS HOLDINGS LTD., a U.K. Limited Company; WILLIAM GRANT & SONS (AME) LTD., a U.K. Limited Company; WILLIAM GRANT & SONS BRANDS LTD., a U.K. Limited Company; WILLIAM GRANT & SONS GLOBAL BRANDS LTD., an Ireland Limited Company; RED TETTEMER, INC., a Pennsylvania Corporation; MODOP, LLC, a Delaware Limited Liability Company; QUAKER CITY MERCANTILE, INC., a Pennsylvania Corporation; and DOES 1-10.<br><br>Defendants. | Case No. 2:25-cv-6511<br><br>Chief Judge Wendy Beetlestone<br><br>Magistrate Judge Scott W. Reid<br><br>**FIRST AMENDED COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501 *et seq.*; CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT; PROVISION AND DISTRIBUTION OF FALSE COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF 17 U.S.C. § 1202(a); COMMON LAW FRAUD/INTENTIONAL MISREPRESENTATION; AND ACCOUNTING.**<br><br>**<u>Jury Trial Demanded</u>** |

FIRST AMENDED COMPLAINT

Plaintiff Bradcliffe LLC ("**Bradcliffe**") is owned by Plaintiff Donald A. McCloskey ("**McCloskey**"), an independent singer-songwriter based in Philadelphia, PA.  This case is about the theft of original musical works owned by Plaintiff Bradcliffe that were used by Defendants William Grant & Sons, Inc., William Grant & Sons Americas, LLC, William Grant & Sons US Distillers LLC, William Grant & Sons USA Corp., William Grant & Sons Ltd., William Grant & Sons Holdings Ltd., William Grant & Sons (AME) Ltd., William Grant & Sons Brands Ltd., and William Grant & Sons Global Brands Ltd. (collectively "**William Grant**"), Red Tettemer, Inc. ("**Red Tettemer**"), ModOp, LLC ("**Mod Op**"), and Quaker City Mercantile, Inc. ("**Quaker City Mercantile**") in a global advertising campaign promoting William Grant's "Tullamore D.E.W." brand of Irish whiskey products without Plaintiff's consent, authorization, or any payment being made to it.  The unauthorized advertisements featuring derivatives of Plaintiff's musical works were produced by Defendants for various marketing mediums, including radio, broadcast TV, streaming, YouTube, online, and social media and were then performed and distributed by Defendants via these mediums throughout the United States and globally for several years. Notably, the Tullamore D.E.W. audiovisual commercial entitled "SO WHATDYA D.E.W.?" featuring an unauthorized derivative of Plaintiff's song, "*Tullamore Tullamore Tullamore Dew,*" has run during various professional sporting events throughout the years, including during NHL games, MLB games, NBA games, and even ***during the 2025 Super Bowl game***.  Moreover, the wildly successful :30 second YouTube video of the "SO WHATDYA D.E.W.?" commercial posted on Defendant William Grant's "Tullamore D.E.W. Official" YouTube account on March 15, 2024 received over **39 million views** and another :30 second YouTube video of the commercial posted by Defendant William Grant a year earlier, on March 14, 2023, received over **34 million views**.  Additionally, the :15 second and :48 second spots of the ad have received over 2.7 million and 143,000 views, respectively.

The infringing "SO WHATDYA D.E.W.?" commercials featuring Plaintiff's song have been so successful that countless comments generated by fans have been posted on YouTube, Reddit, and elsewhere, with users noting:

- "This ad is always on but it's so catchy you love it."

- "Honestly this a jam."

- "A YouTube ad that I don't skip through.  Now here I am I actually went out of my way and looked it up."

- "Best YouTube ad song ever."

- "This is an absolute banger."

- "Today, on St. Patty's, I drank Tullamore for the first time.  And it was really good.  This ad got me.  I was telling my friends 'have you seen the ad with the Tullamore song!?  It's awesome.'  Well done Tullamore marketing team."

- "Best ad ever."

- "One in a million commercial where people went to search it after it played during any video to see it again."

- "The best commercial made yet."

- "Talk about a catchy tune."

- "Honestly this song went hard."

- "This is so good I love it 😍😍 "

- "This is honestly the only add [sic] I'm happy shows up on here.  You'll never catch me skipping or complaining.  Might try to recreate this song at the local bar."

- "Always stuck in my head.  I sing it out loud at work everyday [sic] lol."

FIRST AMENDED COMPLAINT

- "This is dope I've listen [sic] to this like 20 times in the last 10 minutes.  Edit: **Like it is so good I have never like[d] a commercial song but dang it's good.**"

- "I need a full length version of this song."

- "Best add [sic] I've seen in a long time. Concise, to the point, and a great song."

- "The only ad that I don't skip."

- "This is the actual best song."

- "This is an ad for the ages here."

- "Now this is the kind of ad I like.  Relevant, witty, and actually sounds good."

- "This is one of the best advertisements I've seen in a long time.  It actually has a very good energy which exudes onto us causing a ripple effect.  The joyfulness and vibes always makes me want to be a better person.  Ty for putting thought and positive energies into this commercial 🙏❤ "

- "We need a full song on this one."

- "How does an ad have such a fire song."

- "This is probably the first ever ad that catches my attention, great job Tullamore Dew!"

- "Thanks for the joy."

- "Just saw the ad, and now I want a full version for Spotify, YouTube, and anywhere else."

- "Why does this still live in my head 2 years later?"

- "I can't get this song out of my head."[1]

---

[1] See YouTube comments left on :15 version, :30 versions, and :48 version of the Tullamore D.E.W. "SO WHATDYA D.E.W.?" ads at https://www.youtube.com/watch?v=gNfyS6P3XIU, https://www.youtube.com/watch?v=ek5QztZxbKY, https://www.youtube.com/watch?v=-7FuKzh0FMk, and https://www.youtube.com/watch?v=i4X7XSL9fSU.

FIRST AMENDED COMPLAINT

It is undeniable that the "SO WHATDYA D.E.W.?" commercials featuring Plaintiff's song are culturally relevant commercial hits for the Tullamore D.E.W. brand that are memorable and engaging.  As a result of these infringing advertisements as well as other unauthorized derivatives featuring Plaintiff's works, Defendant William Grant has profited from a significant increase in sales of its Tullamore D.E.W. Irish whiskey products as well as an increase in its overall brand recognition and consumer goodwill on a global scale.  Additionally, the advertising agencies that created the ads, namely Defendants Red Tettemer, Mod Op, and Quaker City Mercantile, have likewise profited from the illegal exploitation of Plaintiff's musical works.  Despite receiving detailed Cease-and-Desist Demand letters from Plaintiff Bradcliffe in August 2025 concerning these claims, Defendants continued to run the infringing "SO WHATDYA D.E.W.?" commercials as well as the other infringing commercials online, on the radio, via broadcast TV, and through various streaming platforms for many additional months.  Defendant William Grant only removed the several versions of the "SO WHATDYA D.E.W.?" commercials from its YouTube account a few weeks ago.

Plaintiffs Bradcliffe and McCloskey have been harmed by Defendants' past and continuing infringements and unlawful conduct and hereby pray to this Court for relief based on the following:

**JURISDICTION AND VENUE**

1.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* and Pennsylvania common law.

2.      This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a).

3.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b)(2) and 1400(a) because this is the judicial district in which a substantial part of the events and omissions giving

FIRST AMENDED COMPLAINT

rise to the claims occurred, and the Defendants and their agents may be found in this judicial district, as set forth below.

**PARTIES**

4.     Plaintiff Bradcliffe is a Pennsylvania limited liability company with its principal place of business located at 537 Martins Corner Road, Coatesville, PA 19320.  As the author and copyright claimant to the musical works at issue in this case, Bradcliffe is entitled to institute and maintain this action under 17 U.S.C. § 501(b).

5.     Plaintiff Donald A. McCloskey is a singer-songwriter residing in greater Philadelphia, PA and is the sole owner of Plaintiff Bradcliffe LLC.  McCloskey is known for his eclectic and unique style of songwriting, and he has a particular affinity for and deep knowledge of traditional Irish folk music.

6.     Upon information and belief, Defendant William Grant & Sons, Inc. is a New Jersey corporation with a principal place of business located at 130 Fieldcrest Ave., Edison, NJ 08837.

7.     Upon information and belief, Defendant William Grant & Sons Americas, LLC is a Florida limited liability company with a registered office address of 1395 Brickell Avenue, Suite 900, Miami, FL 33131.

8.     Upon information and belief, Defendant William Grant & Sons US Distillers LLC is a Delaware limited liability company with a registered office of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

9.     Upon information and belief, Defendant William Grant & Sons USA Corp. is a Delaware corporation with a registered office of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

FIRST AMENDED COMPLAINT

10.    Upon information and belief, Defendant William Grant & Sons Ltd. is a limited company incorporated in Scotland with its registered office at The Glenfiddich Distillery, Dufftown, Banffshire, AB55 4DH.

11.    Upon information and belief, Defendant William Grant & Sons Holdings Ltd. (previously William Grant & Sons Dufftown Limited) is a limited company incorporated in England with its registered office at The Old Court House, 7 Parkshot, Richmond, United Kingdom, TW9 2RF.

12.    Upon information and belief, Defendant William Grant & Sons (AME) Ltd. is a limited company incorporated in England with its registered office at The Old Court House, 7 Parkshot, Richmond, United Kingdom, TW9 2RF.

13.    Upon information and belief, Defendant William Grant & Sons Brands Ltd. is a limited company incorporated in England with its registered office at The Old Court House, 7 Parkshot, Richmond, United Kingdom, TW9 2RF.

14.    Upon information and belief, Defendant William Grant & Sons Global Brands Ltd. is a limited company incorporated in Ireland with its registered office at Ballard & Clonminch, Co. Offaly R35 E027 Tullamore, Offaly, Ireland.

15.    Upon information and belief, Defendant Red Tettemer, Inc. is a Pennsylvania corporation with a principal place of business located at 2400 Market Street, Suite 102, Philadelphia, PA 19103.

16.    Upon information and belief, Defendant ModOp, LLC is a Delaware limited liability company with a place of business located at 2400 Market Street, Suite 102, Philadelphia, PA 19103.

17.    Upon information and belief, Defendant Quaker City Mercantile, Inc. is a Pennsylvania corporation with a principal place of business located at 234 Market St., Floor 3, Philadelphia, PA 19106.

7
FIRST AMENDED COMPLAINT

18.    Upon information and belief, Defendants Red Tettemer and Mod Op are doing business in and with the Commonwealth of Pennsylvania and residents of this judicial district in connection with their branding and advertising consultancy services and conducted business in this state concerning the infringing commercials at issue in this lawsuit.  Defendants Red Tettemer and Mod Op offer their branding and advertising consultancy services to companies within this judicial district, including Defendant William Grant, and those services take place within this judicial district.  In 2024, Defendant Mod Op acquired Defendant Red Tettemer.  Upon information and belief, both Defendant Mod Op and Red Tettemer distributed, displayed, performed, promoted, and sold the infringing commercials at issue in this lawsuit in Pennsylvania and profited from the performance, promotion, display, and distribution of the infringing commercials in Pennsylvania.  Moreover, Defendants Red Tettemer and Mod Op provided services to Defendant William Grant concerning the Tullamore D.E.W. project at issue in this lawsuit and entered into contracts concerning Plaintiff's musical works at issue in this lawsuit in Pennsylvania.  Both Red Tettemer and Mod Op have offices located in this judicial district in Philadelphia, PA.

Defendant Red Tettemer provided advertising consultancy services to Defendant William Grant in this judicial district concerning the Tullamore D.E.W. commercials at issue in this litigation and has profited from the production, performance, and distribution of these commercials in this judicial district.  Moreover, upon information and belief, Defendant Mod Op provided services to Defendant William Grant in this judicial district concerning the Tullamore D.E.W. commercials at issue in this lawsuit and has profited from the production, performance, and distribution of these commercials in this judicial district.  Specifically, the unauthorized Tullamore D.E.W. radio advertisements and audiovisual advertisements featuring unauthorized derivatives of Plaintiff's musical works were performed and distributed by Defendants Red Tettemer and Mod Op on radio stations and TV channels in this judicial district, including on

94.1 WIP sports talk radio in Philadelphia.  Additionally, upon information and belief, the unauthorized online and TV broadcast and streaming advertisements produced by Defendant Red Tettemer, including the "Tullamore D.E.W. Anthem" (:30 versions and :15 version) and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World" (:30 version) audiovisual commercials, were also performed and distributed by Defendants Red Tettemer and Mod Op in this judicial district.

19.     Upon information and belief, Quaker City Mercantile is doing business in and with the Commonwealth of Pennsylvania and residents of this judicial district in connection with its branding and advertising consultancy services, which are offered to companies within this judicial district and take place within this judicial district.  Quaker City Mercantile's office is located in Philadelphia, PA.  Upon information and belief, Quaker City Mercantile provided services to William Grant in this judicial district concerning the Tullamore D.E.W. commercials at issue in this lawsuit and has profited from the production, performance, and distribution of these commercials.  Specifically, the unauthorized Tullamore D.E.W. radio advertisements and audiovisual advertisements featuring unauthorized derivatives of Plaintiff's musical works were performed and distributed by Quaker City Mercantile on radio stations and TV channels in this judicial district, including on 94.1 WIP sports talk radio in Philadelphia.  Additionally, upon information and belief, the unauthorized online and TV broadcast and streaming advertisements, including the "SO WHATDYA D.E.W.?" (:15 version, :30 versions, and :48 version) audiovisual commercials produced by Quaker City Mercantile were also performed and distributed by Quaker City Mercantile within this judicial district.

20.     Upon information and belief, Defendant William Grant is doing business in and with the Commonwealth of Pennsylvania and residents of this judicial district in connection with the advertising, promotion, sales, and distribution of its alcoholic beverages, including its Tullamore D.E.W. brand of Irish whiskey products, to consumers and establishments located in

FIRST AMENDED COMPLAINT

this judicial district.  Moreover, Defendant William Grant contracted with Philadelphia-based advertising agencies, Defendants Red Tettemer and Quaker City Mercantile, to create the advertisements at issue in this lawsuit, and the development of those advertisements took place in this judicial district.  Upon information and belief, the unauthorized radio advertisements featuring unauthorized derivatives of Plaintiff's musical works were performed and distributed by Defendant William Grant on radio stations in this judicial district, including on WIP 94.1 sports talk radio in Philadelphia.  Moreover, the audiovisual commercials featuring unauthorized derivatives of Plaintiff's musical works, including the "SO WHATDYA D.E.W.?" commercials, were broadcast on TV stations located in this judicial district, including in Philadelphia.  The audiovisual commercials featuring unauthorized derivatives of Plaintiff's musical works were also streamed by consumers located in this judicial district and were actively promoted and otherwise distributed to consumers located in this judicial district.  Finally, the various unauthorized online advertisements produced by Defendant Red Tettemer and Quaker City Mercantile were performed and distributed by Defendant William Grant in this judicial district.

As to the William Grant entities located abroad in other countries/territories/regions ("**Foreign William Grant Entities**"), upon information and belief, this Court has personal jurisdiction over these entities as they did business with the U.S.-based Defendants in this action, including Defendants Red Tettemer, ModOp, Quaker City Mercantile, and the U.S.-based William Grant entities, in Pennsylvania and in the United States concerning the infringing commercials at issue in this claim and concerning other business matters, thereby purposefully availing themselves of this Court's jurisdiction.  Moreover, the infringing conduct of the Foreign William Grant Entities that took place in Pennsylvania, in the U.S., and abroad in other countries/territories/regions concerning Plaintiff's musical works at issue in this claim caused harm to Plaintiff Bradcliffe in Pennsylvania.  Further, the predicate infringing acts by U.S.-based Defendants William Grant, Red Tettemer, Mod Op, and Quaker City Mercantile and the Foreign

FIRST AMENDED COMPLAINT

William Grant Entities that led to further infringement by the Foreign William Grant Entities abroad in other countries/territories/regions took place in Pennsylvania and in the United States.

21.     Upon information and belief, Defendants Does 1-10 ("**Doe Defendants**") (altogether with Red Tettemer, Mod Op, Quaker City Mercantile, and William Grant, hereinafter collectively referred to as "**Defendants**"), are other parties not yet identified who have infringed the asserted copyrights, have contributed to the infringement of those copyrights, or have engaged in one or more of the unlawful practices alleged herein.  The true names, whether corporate, individual, or otherwise, of Doe Defendants are presently unknown to Plaintiff Bradcliffe, which therefore sues said Doe Defendants by such fictitious names and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

## FACTUAL ALLEGATIONS

22.     Plaintiff Bradcliffe is the copyright claimant to the musical works entitled "*Tullamore Tullamore Tullamore Dew*" (U.S. Copyright Office Registration No. PAu 4-209-459; Supplemental Registration No. PAu 4-252-393), attached hereto as Exhibit A and "*Tullamore Tullamore Tullamore Dew Version #2*" (U.S. Copyright Office Registration No. PA 2-496-119), attached hereto as Exhibit B (collectively "**Bradcliffe Musical Works**").

23.     Plaintiff is also the copyright claimant to the sound recordings embodying the Bradcliffe Musical Works.  Accordingly, Plaintiff Bradcliffe has standing to maintain this action under 17 U.S.C. § 501(b).

24.     McCloskey, the owner of Plaintiff Bradcliffe, was a W-9 independent contractor at the advertising consultancy agency, Defendant Red Tettemer, in 2021 and 2022.  During that time, McCloskey worked on various advertising projects for different clients of Red Tettemer as a copywriter.  Sometime in 2022, McCloskey was asked by Defendant Red Tettemer to be part

of a team developing ideas to pitch to Defendant William Grant concerning a potential social media advertising campaign for its Tullamore D.E.W. line of Irish whiskey products.

25.     In 2022, Plaintiff Bradcliffe authored the musical work entitled "*Tullamore Tullamore Tullamore Dew*" and fixed it in a sound recording recorded on an iPhone.  See <u>Ex. A</u>. Plaintiff then shared the "*Tullamore Tullamore Tullamore Dew*" musical work with Defendant Red Tettemer to be included in the pitch to Defendant William Grant to potentially be used in a social media advertising campaign for its Tullamore D.E.W. brand.

26.     Thereafter, Plaintiff was told by Defendant Red Tettemer that Defendant William Grant liked the song and thought it had potential to be used in an official campaign.  Plaintiff Bradcliffe subsequently authored a derivative version of the "*Tullamore Tullamore Tullamore Dew*" musical work and titled it "*Tullamore Tullamore Tullamore Dew Version #2*."  See <u>Ex. B</u>. Plaintiff recorded this second musical work at a recording studio and then provided it to Defendant Red Tettemer to be provided to Defendant William Grant to potentially be used in an advertising campaign for its Tullamore D.E.W. brand.

27.     Ultimately, Defendant William Grant relayed to Defendant Red Tettemer that it liked the concept of having Plaintiff's song as set forth in the Bradcliffe Musical Works serve as the central focus in an advertising campaign for its Tullamore D.E.W. line of whiskey products.

28.     Upon information and belief, Defendant Red Tettemer entered into a contract with Defendant William Grant concerning its advertising and consultancy services concerning the Tullamore D.E.W. advertising campaign.

29.     As part of the contract with Defendant William Grant, Defendant Red Tettemer produced and developed numerous audio-only and audiovisual commercials featuring derivative versions of the Bradcliffe Musical Works.  Specifically, Defendant Red Tettemer produced and developed the audiovisual commercials entitled "Tullamore D.E.W. Anthem" (:30 versions and :15 version) and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World" (:30 version),

and other derivatives thereof (collectively "**Unauthorized Red Tettemer/William Grant Derivative Works**"), all of which contain adaptations of the Bradcliffe Musical Works. Screenshots of the posted videos of the "Tullamore D.E.W. Anthem" (:30 versions and :15 version) and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World" (:30 version) audiovisual commercials are attached hereto as Exhibit C.

30.     Plaintiff worked as an independent contractor with Defendant Red Tettemer to develop the Unauthorized Red Tettemer/William Grant Derivative Works with the understanding that if any of the commercials were ultimately chosen by Defendant William Grant and/or Defendant Red Tettemer to run as actual public-facing commercial advertisements, Plaintiff would be compensated for the use of its copyrights in the Bradcliffe Musical Works.

31.     At no point in time did McCloskey or Plaintiff Bradcliffe assign or license any rights to the Bradcliffe Musical Works to Defendants Red Tettemer, William Grant, or any of the other Defendants so that the works could be distributed, copied, performed, or adapted by Defendants.

32.     Rather, at all times that Plaintiff worked with Defendant Red Tettemer as an independent contractor on the Tullamore D.E.W. project, Plaintiff believed that if the Unauthorized Red Tettemer/William Grant Derivative Works or any derivatives thereof were to be run as a commercial campaign, Defendants Red Tettemer and William Grant would follow the lawful and typical protocol of entering into either an assignment agreement or a licensing agreement with Plaintiff Bradcliffe, the owner of the copyrights to the Bradcliffe Musical Works, so that the advertisements could be lawfully run, and Plaintiff would be compensated accordingly for the use of its intellectual property.

33.     Plaintiff Bradcliffe issued invoices concerning the musical services provided by it to Defendant Red Tettemer under its name, Bradcliffe LLC, not under McCloskey's name.

34.    All of the Unauthorized Red Tettemer/William Grant Derivative Works are copies of the Bradcliffe Musical Works as they contain essentially identical protectable elements to Plaintiff's original musical compositions.

35.    For example, tellingly, the Unauthorized Red Tettemer/William Grant Derivative Works and Bradcliffe Musical Works contain the same x-y-x hook phrase structure in the first verse of each song (i.e. three one-measure phrases followed by a one-measure refrain or "hook" repeating the Tullamore D.E.W. name in a specific way).  The lyrics of the hook in the first verse of each song, which read: "… Tul-la-more, Tul-la-more, Tul-la-more DEW," are also the same in all of the works.  See musical notation of the first verse for each relevant iteration below.

> **Bradcliffe Musical Work #1 – *"Tullamore Tullamore Tullamore Dew"***



When the Tik-Tok gal who stole your heart lands in the E. R. for sell-ing her farts, and the



world's on fire, lad, what do we do?    We Tul-la-more, Tul-la-more, Tul-la-more DEW.___    When ya

**Bradcliffe Musical Work #2 – "*Tullamore Tullamore Tullamore Dew Version #2*"**







**Unauthorized Red Tettemer/William Grant Derivative Work –**

**"*Tullamore D.E.W. – Unwavering Whiskey in a Crazy World*" (:30 version)**





FIRST AMENDED COMPLAINT

36.    Additionally, the melodies, rhythms, pitch sequences, instrumentation, phrase structures, and harmonies of the Unauthorized Red Tettemer/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

37.    Further, the overall selection and arrangement of elements in the Unauthorized Red Tettemer/William Grant Derivative Works is strikingly similar to Plaintiff's creative selection and arrangement of the protected elements in its Bradcliffe Musical Works.  The total concept and feel of the works is the same.

38.    Thus, the Unauthorized Red Tettemer/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

39.    The Unauthorized Red Tettemer/William Grant Derivative Works are works that transformed, recast, and/or adapted the Bradcliffe Musical Works and therefore constitute derivative works.

40.    Neither Plaintiff McCloskey nor Plaintiff Bradcliffe consented to, authorized, or licensed the Bradcliffe Musical Works to Defendants to be adapted, used, reproduced, performed, or distributed commercially through the Unauthorized Red Tettemer/William Grant Derivative Works or any other works.

41.    Defendants Red Tettemer and William Grant had access to the Bradcliffe Musical Works because McCloskey provided the sound recordings containing the Bradcliffe Musical Works to Defendant Red Tettemer to be used as part of the pitch to Defendant William Grant concerning the potential advertising campaign project for its Tullamore D.E.W. line of Irish whiskey products.  Upon information and belief, Defendant Red Tettemer provided access to those works to Defendant William Grant through that pitch process or thereafter.

42.    In August 2022, prior to any public performance or distribution of the Unauthorized Red Tettemer/William Grant Derivative Works taking place, Plaintiff emailed Steve O'Connell ("**O'Connell**") and Joe Mosca ("**Mosca**") of Defendant Red Tettemer and

FIRST AMENDED COMPLAINT

requested that a synchronization license, which is required for the lawful use of a musical work in an audiovisual work, be entered into concerning the Bradcliffe Musical Works so that the Unauthorized Red Tettemer/William Grant Derivative Works could be legally distributed and performed by Defendants Red Tettemer and William Grant, and Plaintiff Bradcliffe could be compensated accordingly.  O'Connell and Mosca brushed off Plaintiff's requests, and no synchronization license, licensing agreement, or assignment agreement concerning the Bradcliffe Musical Works was ever entered into between Plaintiff McCloskey or Plaintiff Bradcliffe and any of the Defendants.

43.    Thereafter, Plaintiff was told by an employee of Defendant Red Tettemer that it had lost the William Grant account and that no use of the Unauthorized Red Tettemer/William Grant Derivative Works containing the Bradcliffe Musical Works would be taking place.

44.    Nevertheless, despite not entering into any licensing or assignment agreement concerning the Bradcliffe Musical Works, Defendants Red Tettemer and William Grant went on to copy, store, reproduce, perform, distribute, and otherwise exploit the Bradcliffe Musical Works amongst themselves and the derivative Unauthorized Red Tettemer/William Grant Derivative Works on the radio, online, and elsewhere.

45.    Notably, several published advertising trade articles that, upon information and belief, were placed by Defendant Red Tettemer and Defendant William Grant to promote the collaboration between the brands include website links through which the Unauthorized Red Tettemer/William Grant Derivative Works are performed.  The trade articles publicizing Defendant Red Tettemer's work with Defendant William Grant and featuring the Unauthorized Red Tettemer/William Grant Derivative Works are attached hereto as Exhibit D.

46.    Significantly, in these articles, "Don McCloskey" is listed as the author of the music in the Tullamore D.E.W. advertisements, separate from Defendant Red Tettemer, thereby reflecting his role as an independent contractor of Defendant Red Tettemer.  Although the

17

FIRST AMENDED COMPLAINT

articles should have listed "Bradcliffe LLC" as the author of the music instead of Plaintiff McCloskey personally, the notation still identifies the author of the music as being separate from Defendant Red Tettemer. See id.

47. Upon information and belief, the Unauthorized Red Tettemer/William Grant Derivative Works were also eventually commercially distributed and performed by Defendant Mod Op through various marketing mediums, including radio, online, and social media, after it acquired Defendant Red Tettemer. Defendants Red Tettemer and/or William Grant provided Defendant Mod Op with access to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works.

48. Upon information and belief, at some point in time, Defendant Red Tettemer entered into a contract with Defendant William Grant through which it purported to transfer and/or assign the copyrights to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works to Defendant William Grant, despite the fact that Defendant Red Tettemer did not own the copyrights to these works.

49. Despite Defendants receiving detailed Cease-and-Desist Demand Letters from Plaintiff Bradcliffe in August 2025, the Unauthorized Red Tettemer/William Grant Derivative Works were commercially reproduced, distributed, and performed by Defendants online, via the radio, and elsewhere without Plaintiff Bradcliffe's consent, authorization, or any payment being made to it for many additional months.

50. To the extent Defendants commercially exploited the Unauthorized Red Tettemer/William Grant Derivative Works or any other copies of the Bradcliffe Musical Works more than three years before the filing of this lawsuit, Plaintiff did not know and had no reason to know of such exploitation(s) at the time they originally occurred. Plaintiff did not discover the unauthorized commercial use of the Bradcliffe Musical Works by Defendants until October 2023.

51.     At some point following the campaign with Defendant Red Tettemer, Defendant William Grant entered into a contract with Defendant Quaker City Mercantile, another advertising and branding consultancy agency based in Philadelphia, concerning the creation and production of another advertising campaign for Defendant William Grant's Tullamore D.E.W. line of Irish whiskey products.

52.     Neither Plaintiff McCloskey nor Plaintiff Bradcliffe had any knowledge that Defendant William Grant entered into a contract with Defendant Quaker City Mercantile concerning the production of an advertising campaign using the Bradcliffe Musical Works or any derivatives thereof.

53.     Thereafter, without Plaintiff McCloskey or Plaintiff Bradcliffe's knowledge, consent, or authorization, Defendants Quaker City Mercantile and William Grant went on to produce several audio-only and audiovisual commercials featuring unauthorized derivative versions of the Bradcliffe Musical Works, including the audiovisual commercials entitled "SO WHATDYA D.E.W.?" (:15 version, :30 versions, and :48 version), and other derivatives thereof (collectively "**Unauthorized Quaker City Mercantile/William Grant Derivative Works**"). Screenshots of the posted YouTube videos of the "SO WHATDYA D.E.W.?" audiovisual commercials are attached hereto as Exhibit E.

54.     All of the Unauthorized Quaker City Mercantile/William Grant Derivative Works are copies of the Bradcliffe Musical Works as they contain essentially identical protectable elements to Plaintiff Bradcliffe's original musical compositions.  The Unauthorized Quaker City Mercantile/William Grant Derivative Works and Bradcliffe Musical Works contain the same x-y-x hook phrase structure in the first verse of each song (i.e. three one-measure phrases followed by a one-measure refrain or "hook" repeating the Tullamore D.E.W. name in a specific way).

19

FIRST AMENDED COMPLAINT

**Bradcliffe Musical Work #1 – *"Tullamore Tullamore Tullamore Dew"***





**Bradcliffe Musical Work #2 – *"Tullamore Tullamore Tullamore Dew Version #2"***









**Unauthorized Quaker City Mercantile/William Grant Derivative Work – *"SO WHATDYA D.E.W.?"* (:30 version)**





FIRST AMENDED COMPLAINT



**Unauthorized Quaker City Mercantile/William Grant Derivative Work –**
***"SO WHATDYA D.E.W.?"*** **(:48 version)**

46.    Notably, in some of the other iterations of hooks in both Plaintiff's *"Tullamore Tullamore Tullamore Dew Version #2"* musical work and Defendants' "SO WHATDYA D.E.W.?" audiovisual commercials, the same words, "whad-da-ya-do?" precede the hook, "Tul-la-more, Tul-la-more, Tul-la-more DEW," and then the song ends with a final exclamation of 'Hey!" See relevant musical notations below.

**Bradcliffe Musical Work #2 – *"Tullamore Tullamore Tullamore Dew Version #2"***



**Unauthorized Quaker City Mercantile/William Grant Derivative Work –**
***"SO WHATDYA D.E.W.?"*** **(:48 version)**



55.    Additionally, the melodies, rhythms, pitch sequences, instrumentation, phrase structures, and harmonies of the Unauthorized Quaker City Mercantile/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

56.    The overall selection and arrangement of elements in the Unauthorized Quaker City Mercantile/William Grant Derivative Works is strikingly similar to Plaintiff's creative selection and arrangement of the protected elements in its Bradcliffe Musical Works.  The total concept and feel of the works is the same.

57.    Thus, the Unauthorized Quaker City Mercantile/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

58.    The Unauthorized Quaker City Mercantile/William Grant Derivative Works are works that transformed, recast, and/or adapted the Bradcliffe Musical Works and therefore constitute derivative works.

59.    Upon information and belief, Defendant Quaker City Mercantile had access to the Bradcliffe Musical Works because Defendant William Grant forwarded the sound recordings containing the Bradcliffe Musical Works or copies thereof to it or otherwise provided it with access to the works.

60.    Upon information and belief, Defendant Quaker City Mercantile had access to the Unauthorized Red Tettemer/William Grant Derivative Works because Defendant William Grant forwarded them or copies of them to Defendant Quaker City Mercantile or otherwise provided it with access to the works.

61.    Neither Plaintiff McCloskey nor Plaintiff Bradcliffe licensed or assigned the Bradcliffe Musical Works to Defendants Quaker City Mercantile or William Grant.

FIRST AMENDED COMPLAINT

62.    Neither Plaintiff McCloskey nor Plaintiff Bradcliffe consented to, authorized, or licensed the Bradcliffe Musical Works to Defendants to be adapted, used, reproduced, performed, or distributed commercially through the Unauthorized Quaker City Mercantile/William Grant Derivative Works or any other works.

63.    Nevertheless, despite not entering into any licensing or assignment agreement concerning the Bradcliffe Musical Works, Defendants Quaker City Mercantile and William Grant went on to copy, store, reproduce, perform, distribute, and otherwise commercially exploit the derivative Unauthorized Quaker City Mercantile/William Grant Derivative Works on the radio, TV, online, and elsewhere.

64.    Despite Defendants receiving detailed Cease-and-Desist Demand Letters from Plaintiff Bradcliffe in August 2025, the Unauthorized Quaker City Mercantile/William Grant Derivative Works were willfully commercially reproduced, distributed, and performed by Defendants online, via the radio and TV, social media, and elsewhere without Plaintiff's consent, authorization, or any payment being made to it for many additional months.

65.    To the extent Defendants commercially exploited the Unauthorized Quaker City Mercantile/William Grant Derivative Works or any other copies of the Bradcliffe Musical Works more than three years before the filing of this lawsuit, Plaintiff did not know and had no reason to know of such exploitation(s) at the time they originally occurred.

66.    In August 2025, counsel for Plaintiff, Alyssa M. Bruno, Esq., sent detailed Cease-and-Desist Demand Letters to Defendants concerning the aforementioned claims.  See Cease-and-Desist Demand Letters to Defendants Red Tettemer/Mod Op, William Grant, and Quaker City Mercantile, attached hereto as Exhibits F, G, H.

67.    All of the Defendants responded to Plaintiff through counsel concerning the Cease-and-Desist Demand Letters, yet they continued to exploit Plaintiff's works commercially.

FIRST AMENDED COMPLAINT

68.     In response to Plaintiff's Cease-and-Desist Demand Letter, Defendant Quaker City Mercantile removed a link on its website in which the infringing "SO WHATDYA D.E.W.?" YouTube ad was being performed.  None of the other Defendants ceased any aspect of their infringing conduct until many additional months passed from their receipt of the letters.

69.     Plaintiff has been harmed by Defendants' various infringements.

**COUNT 1: DIRECT COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501**
*Plaintiff Bradcliffe LLC v. All Defendants*

70.     Plaintiffs repeat and allege paragraphs 1 through 69 hereof, as if fully set forth herein in their entirety.

71.     Upon information and belief, Defendants, and each of them, copied, stored, performed, distributed, and/or otherwise exploited copies of the Bradcliffe Musical Works for commercial purposes without a license, authorization, or consent from Plaintiff and without any payment to it.

72.     Specifically, Defendants Red Tettemer, Mod Op, and William Grant produced, copied, stored, performed, distributed, and/or otherwise exploited the Unauthorized Red Tettemer/William Grant Derivative Works, which are unauthorized copies of the Bradcliffe Musical Works, on the radio, online, social media, and elsewhere.

73.     All of the Unauthorized Red Tettemer/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

74.     Moreover, Defendants Quaker City Mercantile and William Grant produced, copied, stored, performed, distributed, and/or otherwise exploited the Unauthorized Quaker City Mercantile/William Grant Derivative Works, which are unauthorized copies of the Bradcliffe Musical Works, on TV, radio, online, social media, streaming, and elsewhere.

75.     All of the Unauthorized Quaker City Mercantile/William Grant Derivative Works are strikingly similar, or at a minimum, substantially similar to the Bradcliffe Musical Works.

FIRST AMENDED COMPLAINT

76.    Defendants had access to the Bradcliffe Musical Works or copies thereof.

77.    Due to Defendants' acts of copyright infringement, Plaintiff has suffered actual damages in the form of lost royalties and other damages in an amount to be established at trial.

78.    Due to Defendants' acts of copyright infringement, Defendants, and each of them, have obtained profits, both direct and indirect profits, they would not have realized but for their infringement of the copyrights in the Bradcliffe Musical Works.  As such, Plaintiff is entitled to the disgorgement of Defendants' profits attributable to Defendants' infringement of the copyrights in the Bradcliffe Musical Works, both indirect and direct profits in the U.S. and in other countries/territories/regions abroad, in an amount to be established at trial.

## COUNT 2: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
*Plaintiff Bradcliffe LLC v. All Defendants*

79.    Plaintiffs repeat and allege paragraphs 1 through 78 hereof, as if fully set forth herein in their entirety.

80.    Upon information and belief, Defendant Red Tettemer is contributorily liable for the infringements of Defendants William Grant, Mod Op, and Quaker City Mercantile as alleged herein as it knowingly induced, caused, participated in, aided and abetted in, and profited from their illegal production, reproduction, performance, distribution, and exploitation of the infringing Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works.

81.    Specifically, upon information and belief, Defendant Red Tettemer was an active participant in producing the infringing Unauthorized Red Tettemer/William Grant Derivative Works and then oversaw whether and how those infringing commercials were then publicly distributed, performed, and exploited by Defendant William Grant.

82.    Moreover, upon information and belief, Defendant Red Tettemer knew that it did not own the copyrights to the Bradcliffe Musical Works and did not have Plaintiff's consent or

authorization to exploit these works commercially, yet it transferred these works to Defendant William Grant who then transferred them to Defendant Quaker City Mercantile to be used and/or copied for the development, reproduction, performance, distribution, and commercial exploitation of the infringing Unauthorized Quaker City Mercantile/William Grant Derivative Works.

83.    Additionally, upon information and belief, Defendant Red Tettemer also knowingly induced, caused, participated in, aided and abetted in, and profited from the illegal reproduction, performance, distribution, and exploitation of the infringing Unauthorized Red Tettemer/William Grant Derivative Works by Defendant Mod Op because it transferred the works to Defendant Mod Op or otherwise knowingly allowed the works to be exploited by Defendant Mod Op for future commercial exploitation despite knowing that it did not own the copyrights to the underlying Bradcliffe Musical Works or have Plaintiff's consent or authorization for the commercial exploitation of derivatives of those works.

84.    Critically, Defendant Red Tettemer is also contributorily liable for the continued infringements of Defendants Mod Op, William Grant, and Quaker City Mercantile as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant Red Tettemer knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

85.    Furthermore, upon information and belief, Defendant Red Tettemer is vicariously liable for the infringements by Defendant William Grant alleged herein concerning the

FIRST AMENDED COMPLAINT

Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendant William Grant concerning these works as it actively produced them on behalf of Defendant William Grant and then had the right and ability to oversee how and where these works were publicly distributed, performed, and exploited by Defendant William Grant. Defendant Red Tettemer had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendant William Grant as it was compensated by Defendant William Grant for the production and subsequent exploitation of these works.

86. Upon information and belief, Defendant Red Tettemer is vicariously liable for the infringements by Defendant Mod Op alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendant Mod Op concerning these works as it oversaw how and where these works were publicly distributed, performed, and exploited by Defendant Mod Op. Defendant Red Tettemer had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendant Mod Op because upon information and belief, Defendant Red Tettemer was compensated as a result of Defendant Mod Op's exploitation of these works.

87. Upon information and belief, Defendant Red Tettemer is vicariously liable for the infringements by Defendant William Grant alleged herein concerning the Unauthorized Quaker City Mercantile/William Grant Derivative Works because Defendant Red Tettemer had the ability to supervise and control the infringing conduct of Defendant William Grant as it entered into a purported transfer of rights agreement with Defendant William Grant concerning the copyrights to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works, which were then used by Defendants William Grant and Quaker City Mercantile to create the Unauthorized Quaker City Mercantile/William Grant Derivative Works,

FIRST AMENDED COMPLAINT

even though it did not own the copyrights to these works.  Upon information and belief, Defendant Red Tettemer received payment from Defendant William Grant for the purported transfer of the rights to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works; thus, it had a direct financial interest in Defendant William Grant's infringement.  Upon information and belief, Defendant Red Tettemer also directly profited from the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendant William Grant.

88.    Upon information and belief, Defendant William Grant is contributorily liable for the infringements of Defendants Red Tettemer, Mod Op, and Quaker City Mercantile as alleged herein as it knowingly induced, caused, participated in, aided and abetted in, and profited from their illegal production, reproduction, performance, distribution, and exploitation of the infringing Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works.

89.    Specifically, upon information and belief, Defendant William Grant was an active participant in producing the infringing Unauthorized Red Tettemer/William Grant Derivative Works and then oversaw whether and how those infringing commercials were then publicly distributed, performed, and exploited by Defendant Red Tettemer and subsequently, Defendant Mod Op.

90.    Moreover, upon information and belief, Defendant William Grant knew that it did not own the copyrights to the Bradcliffe Musical Works and/or the Unauthorized Red Tettemer/William Grant Derivative Works and did not have Plaintiff's consent or authorization to exploit these works commercially, yet it transferred these works to Defendant Quaker City Mercantile to be used and/or copied for the development, reproduction, performance, distribution, and commercial exploitation of the infringing Unauthorized Quaker City Mercantile/William Grant Derivative Works.  Upon information and belief, Defendant William

Grant was also an active participant in the production of the Unauthorized Quaker City Mercantile/William Grant Derivative Works and then oversaw the subsequent distribution, performance, and exploitation of these works by Defendant Quaker City Mercantile.

91.     Critically, Defendant William Grant is also contributorily liable for the continued infringements of Defendants Red Tettemer, Mod Op, and Quaker City Mercantile as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant William Grant knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

92.     Furthermore, upon information and belief, Defendant William Grant is vicariously liable for the infringements by Defendants Red Tettemer and Mod Op alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendants Red Tettemer and Mod Op concerning these works as it was actively engaged in the creation and production of these commercials and then had the right and ability to oversee how and where they were publicly distributed, performed, and exploited by Defendants Red Tettemer and Mod Op.  Defendant William Grant had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendants Red Tettemer and Mod Op as it benefited through increased brand awareness and sales of its Tullamore D.E.W. Irish whiskey products as a result of the promotion, performance, and distribution of the Unauthorized Red Tettemer/William Grant Derivative Works by them.

93. Upon information and belief, Defendant William Grant is vicariously liable for the infringements by Quaker City Mercantile alleged herein concerning the Unauthorized Quaker City Mercantile/William Grant Derivative Works because Defendant William Grant had the right and ability to supervise and control the infringing conduct of Defendant Quaker City Mercantile as it hired Defendant Quaker City Mercantile to create the Unauthorized Quaker City Mercantile/William Grant Derivative Works even though it did not own the copyrights to the Bradcliffe Musical Works that are the underlying works from which the Unauthorized Quaker City Mercantile/William Grant Derivative Works are derived and then played an active role in the creation and production of the commercials by Defendant Quaker City Mercantile. Defendant William Grant then had the right and ability to see how and where the Unauthorized Quaker City Mercantile/William Grant Derivative Works were publicly distributed, performed, and exploited by Defendant Quaker City Mercantile. Defendant William Grant had a direct financial interest in the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendant Quaker City Mercantile as it benefited through increased brand awareness and sales of its Tullamore D.E.W. Irish whiskey products as a result of the promotion, performance, and distribution of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by it.

94. Upon information and belief, Defendant Mod Op is contributorily liable for the continued infringements of Defendants Red Tettemer, William Grant, and Quaker City Mercantile as alleged herein. Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant Mod Op knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red

FIRST AMENDED COMPLAINT

Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

95.    Upon information and belief, Defendant Mod Op is also vicariously liable for the infringements by Defendants Red Tettemer and William Grant alleged herein concerning the Unauthorized Red Tettemer/William Grant Derivative Works because it had the right and ability to control the infringing conduct by Defendants Red Tettemer and William Grant concerning these works as it had the right and ability to oversee how and where they were publicly distributed, performed, and exploited by Defendants Red Tettemer and William Grant. Defendant Mod Op also had a direct financial interest in the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by Defendants Red Tettemer and William Grant as it profited from the exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works by them.

96.    Upon information and belief, Defendant Quaker City Mercantile is contributorily liable for the continued infringements of Defendants Red Tettemer, Mod Op, and William Grant as alleged herein.  Even after receiving and acknowledging receipt of the August 2025 Cease-and-Desist Demand Letter from Plaintiff and possessing knowledge that Defendants did not own the rights to the underlying musical compositions at issue, i.e. the Bradcliffe Musical Works, and did not have Plaintiff's consent or authorization to exploit these works or any derivatives thereof commercially, Defendant Quaker City Mercantile knowingly encouraged, caused, aided and abetted, and assisted in the continued illegal exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendants.

97.    Upon information and belief, Defendant Quaker City Mercantile is also vicariously liable for the infringements by Defendant William Grant alleged herein concerning the Unauthorized Quaker City Mercantile/William Grant Derivative Works because it had the

31

right and ability to control the infringing conduct by Defendant William Grant concerning these works as it had the right and ability to oversee how and where they were publicly distributed, performed, and exploited by Defendant William Grant.  Defendant Quaker City Mercantile also had a direct financial interest in the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by Defendant William Grant as it profited from the exploitation of the Unauthorized Quaker City Mercantile/William Grant Derivative Works by it.

**COUNT 3: PROVISION AND DISTRIBUTION OF FALSE COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF 17 U.S.C. § 1202(a)**

*Plaintiff Bradcliffe v. Defendants Red Tettemer, Quaker City Mercantile, and William Grant*

98.     Plaintiffs repeat and allege paragraphs 1 through 97 hereof, as if fully set forth herein in their entirety.

99.     Plaintiff Bradcliffe is the author and sole copyright claimant of the Bradcliffe Musical Works.

100.     Defendants knew that they were not the authors or copyright claimants of the Bradcliffe Musical Works, yet they provided, displayed, reproduced, distributed, and performed unauthorized copies of these works in the form of derivative works, namely the "Anthem," "Unwavering Whiskey in a Crazy World," and "SO WHATDYA D.E.W.?" commercials, among other variations, along with copyright management information (CMI) that they knew was false.

101.     Specifically, Defendant Red Tettemer knowingly provided and distributed false CMI in the form of the name, "Tullamore D.E.W.," to be used by The Star Ads on its YouTube channel in connection with the display, performance, and distribution of the "Unwavering Whiskey in a Crazy World" video, which is an unauthorized derivative work (i.e. unauthorized copy) of the Bradcliffe Musical Works.  It also provided and distributed the false CMI in the form of its name "RTOP" to be used by Bottle on its YouTube channel in connection with the display, performance, and distribution of the "Tullamore D.E.W. – Anthem" video, which is an

FIRST AMENDED COMPLAINT

unauthorized derivative work of the Bradcliffe Musical Works, as well as on its website and Vimeo in connection with the video.  It further provided and distributed false CMI in the form of its name "RTO+P" and the name "Tullamore D.E.W." to adforum to be used on the website, www.adforum.com, in connection with the display, performance, and distribution of "Tullamore D.E.W. – 'Tullamore D.E.W. Anthem (:30)'" and "Tullamore D.E.W. – 'Tullamore D.E.W. Anthem (:15)'" videos, which are unauthorized derivative works of the Bradcliffe Musical Works.

102.    Defendant Red Tettemer knowingly provided and distributed this false CMI in connection with the aforementioned unauthorized derivative works that include unauthorized copies of the Bradcliffe Musical Works rather than accurate CMI identifying Plaintiff Bradcliffe as the author and copyright holder of the musical works in these videos with the intent to induce, facilitate, enable, an conceal its own infringement and any future infringement by Defendants and any third party of the Bradcliffe Musical Works.  It did this so that it could successfully make profits off of producing, promoting, displaying, distributing, and performing the unauthorized derivative works of the Bradcliffe Musical Works, including the videos mentioned above, as well as represent to Defendant William Grant and the public that it held the rights to the Bradcliffe Musical Works and any derivative thereof, which it did not.  Such actions violate 17 U.S.C. § 1202(a)(1) and (2).

103.    Defendant Quaker City Mercantile knowingly provided and distributed false CMI in the form of its name "Quaker City Mercantile," its website domain, https://quakercitymercantile.com/work/tullamore-d-e-w/, and the name "Tullamore D.E.W." in connection with the display, performance, and distribution of the "SO WHATDYA D.E.W.? (:30 version)" commercial, which is an unauthorized derivative work of the Bradcliffe Musical Works, on its website.  Further, on the bottom of Quaker City Mercantile's website, it states "© 2026 Quaker City Mercantile," with the year of the copyright notice reflecting the current year.

FIRST AMENDED COMPLAINT

By holding out that the site and the contents of the site are owned by Quaker City Mercantile, Defendant Quaker City Mercantile is representing to the public that it owns the copyright to the content on the site, including the "SO WHATDYA D.E.W.?" advertisement, which is an unauthorized derivative work of the Bradcliffe Musical Works.

104.    Upon information and belief, Defendant Quaker City Mercantile also provided and distributed false CMI in the form of its name "Quaker City Mercantile" and the name "Tullamore D.E.W." in connection with outdoor advertisements featuring the "SO WHATDYA D.E.W.?" commercials, indoor advertisements featuring the "SO WHATDYA D.E.W.?" commercials, and other online postings, performances, and streaming of the "SO WHATDYA D.E.W.?" commercials, which are unauthorized derivative works of the Bradcliffe Musical Works.

105.    Defendant Quaker City Mercantile knowingly provided and distributed the aforementioned false CMI in connection with the aforementioned unauthorized commercials, which are unauthorized derivatives of the Bradcliffe Musical Works, rather than accurate CMI identifying Plaintiff Bradcliffe as the author and copyright holder of the musical works in the "SO WHATDYA D.E.W.?" videos with the intent to induce, facilitate, enable, and conceal its own infringement and any future infringement by Defendants and any third party of the Bradcliffe Musical Works.  It did this so that it could successfully make profits off of producing, promoting, displaying, distributing, and performing unauthorized derivative works of the Bradcliffe Musical Works as well as represent to the public that it held the rights to the Bradcliffe Musical Works and any derivative thereof, which it did not.  Such actions violate 17 U.S.C. § 1202(a)(1) and (2).

106.    Defendant William Grant knowingly provided and distributed false CMI in the form of its names "Tullamore D.E.W.," "Tullamore D.E.W. Irish Whiskey," and its YouTube channel name, "Tullamore D.E.W. Official," in connection with the display, performance, and

FIRST AMENDED COMPLAINT

distribution of the various versions of the "SO WHATDYA D.E.W.?" commercials (i.e. two (2) :30 versions, :48 version, and :15 version)), which are unauthorized derivative works of the Bradcliffe Musical Works, on its YouTube channel. Further, at the end of the :30 version of the "SO WHATDYA D.E.W.?" commercial posted on March 14, 2023, the :48 version, and the :15 version, it states "© 2023 Imported by William Grant & Sons Inc. New York, NY" at the bottom of ad, and at the end of the :30 version of the commercial posted on March 15, 2024, it states "© 2024 Imported by William Grant & Sons Inc. New York, NY" at the bottom of the ad. On the description section of Defendant William Grant's YouTube channel home page, it states "Tullamore D.E.W. Irish Whiskey © 2024 Managed by William Grant & Sons Inc. New York, NY." By holding out that the "SO WHATDYA D.E.W.?" commercials and the contents of its YouTube channel are owned by it, Defendant William Grant is representing to the public that it owns the copyright to all of the elements of the "SO WHATDYA D.E.W.?" commercials, including the jingles in the ads, which are unauthorized derivative works of the Bradcliffe Musical Works.

107.    Moreover, on Defendant William Grant's "Terms & Conditions" website page, https://www.tullamoredew.com/en-gb/terms-and-conditions/, which is accessible through a link in the description section of its YouTube channel page connected to the "SO WHATDYA D.E.W.?" ads, it states:

> Intellectual Property.
>
> 4. Unless otherwise stated, the copyright and other intellectual property rights in all material on the Website (including without limitation trademarks, designs, logos, text, images, audio and video materials and bottle designs) are owned or licensed by the Company.
>
> 5. Without limitation, the trademarks and all related logos, labels, bottle designs and all other intellectual property associated with the Tullamore D.E.W. brand are owned by the Company.

FIRST AMENDED COMPLAINT

Again, by holding out that the "SO WHATDYA D.E.W.?" commercials and the contents of its YouTube channel, including the "audio and video materials" present on the channel, are owned by it, Defendant William Grant is representing to the public that it owns the copyright to all of the elements of the "SO WHATDYA D.E.W.?" commercials, including the jingles in the ads, which are unauthorized derivative works of the Bradcliffe Musical Works.

108. Upon information and belief, Defendant William Grant also provided and distributed false CMI in the form of its names "Tullamore D.E.W.," "Tullamore D.E.W. Irish Whiskey," and "Tullamore D.E.W. Official," and the copyright notice tags/identifiers, including "© 2023 Imported by William Grant & Sons Inc. New York, NY," "© 2024 Imported by William Grant & Sons Inc. New York, NY," and variations thereof, in connection with outdoor advertisements featuring the "SO WHATDYA D.E.W.?" commercials, indoor advertisements featuring the "SO WHATDYA D.E.W.?" commercials, and other online postings, performances, and streaming of the "SO WHATDYA D.E.W.?" commercials, which are unauthorized derivative works of the Bradcliffe Musical Works.

109. Defendant William Grant knowingly provided and distributed the aforementioned false CMI in connection with the aforementioned unauthorized commercials, which are unauthorized derivatives of the Bradcliffe Musical Works, rather than accurate CMI identifying Plaintiff Bradcliffe as the author and copyright holder of the musical works in the "SO WHATDYA D.E.W.?" videos with the intent to induce, facilitate, enable, and conceal its own infringement and any future infringement by Defendants and any third party of the Bradcliffe Musical Works. It did this so that it could successfully make profits off of producing, promoting, displaying, distributing, and performing unauthorized derivative works of the Bradcliffe Musical Works as well as represent to the public that it held the rights to the

FIRST AMENDED COMPLAINT

Bradcliffe Musical Works and any derivative thereof, which it did not.  Such actions violate 17 U.S.C. § 1202(a)(1) and (2).

## COUNT 4: COMMON LAW FRAUD/INTENTIONAL MISREPRESENTATION
*Plaintiffs Bradcliffe and Donald A. McCloskey v. Defendant Red Tettemer*

110.    Plaintiffs repeat and allege paragraphs 1 through 109 hereof, as if fully set forth herein in their entirety.

111.    Upon information and belief, Defendant Red Tettemer made intentional misrepresentations and fraudulently induced Plaintiffs McCloskey and Bradcliffe to provide access to copies of the Bradcliffe Musical Works so that it could then enter into a contract with Defendant William Grant purporting to assign the copyrights to those works to Defendant William Grant even though Defendant Red Tettemer did not own the rights to the Bradcliffe Musical Works or any derivative thereof and so that it could provide copies of the Bradcliffe Musical Works to Defendant William Grant or another entity to be used for commercial purposes without Plaintiffs' consent or authorization.

112.    Specifically, Defendant Red Tettemer intentionally and falsely represented to Plaintiffs McCloskey and Bradcliffe that Defendant Red Tettemer needed "splits" of the final Tullamore D.E.W. mixes, including instrumental, vocals only, and SFX only splits, which are derivatives of the Bradcliffe Musical Works, for its own archival records.

113.    As a result, Plaintiffs McCloskey and Bradcliffe provided these "splits/stems," which are derivative works of the Bradcliffe Musical Works, to Defendant Red Tettemer in reliance upon Defendant Red Tettemer's representation that these works would be used for archive-only purposes within Red Tettemer.

114.    Nevertheless, upon information and belief, Defendant Red Tettemer knew that it would be moving forward in providing the "splits/stems" or other derivatives of the Bradcliffe

FIRST AMENDED COMPLAINT

Musical Works to Defendant William Grant or another entity so that Defendant William Grant or another entity could use the works as they pleased without Plaintiffs' consent or authorization and intentionally mispresented its intentions concerning its request for the "splits" to Plaintiffs to mislead them into providing these works.

115. Upon information and belief, Defendant Red Tettemer then transferred these "splits/stems," which are derivatives of the Bradcliffe Musical Works, to Defendant William Grant or another entity.

116. Plaintiffs McCloskey and Bradcliffe justifiably relied upon Defendant Red Tettemer's material false representations concerning its purported use of the "splits/stems" for archival purposes only within Red Tettemer and provided these works to Defendant Red Tettemer.

117. Plaintiffs McCloskey and Bradcliffe were injured as a result of their justifiable reliance upon Defendant Red Tettemer's intentional misrepresentations because the "splits/stems" and other derivative works of the Bradcliffe Musical Works were then used by Defendant William Grant and others in a commercial nature without Plaintiffs' consent, authorization, or any payment being made to them, and Defendants and others profited from these unauthorized commercial uses of the Bradcliffe Musical Works.

118. Additionally, Defendant Red Tettemer intentionally and falsely represented to Plaintiffs McCloskey and Bradcliffe that the derivatives of the Bradcliffe Musical Works would not be used in a commercial nature by Defendants Red Tettemer, William Grant, or any other entity because Defendant Red Tettemer had lost the account, and the Tullamore D.E.W. project would not be moving forward.

119. As a result of justifiably relying upon these material false representations, Plaintiffs stopped pursuing the issue of the synchronization license that Plaintiff Bradcliffe had raised to Defendant Red Tettemer via email.

FIRST AMENDED COMPLAINT

120. Defendant Red Tettemer's representations to Plaintiffs McCloskey and Bradcliffe were false because upon information and belief, Defendant Red Tettemer entered into a contract with Defendant William Grant in which it purported to transfer the rights to the Bradcliffe Musical Works and any derivative thereof to Defendant William Grant, without Plaintiffs' consent or authorization; thus, commercial use of the Bradcliffe Musical Works without Plaintiffs' consent had taken place. Defendant Red Tettemer's misrepresentations to Plaintiffs were intentional and were intended to prevent Plaintiffs from discovering that a contract concerning the Bradcliffe Musical Works had been entered into and from pursuing the issue of the synchronization license further.

121. Plaintiffs McCloskey and Bradcliffe were injured as a result of their justifiable reliance upon Defendant Red Tettemer's material intentional misrepresentations because the derivative works of the Bradcliffe Musical Works were then used by Defendant William Grant and others in a commercial nature without Plaintiffs' consent, authorization, or any payment being made to them, and Defendants and others profited from these unauthorized commercial uses of the Bradcliffe Musical Works.

### COUNT 5: ACCOUNTING
*Plaintiffs Bradcliffe and Donald A. McCloskey v. All Defendants*

122. Plaintiffs repeat and allege paragraphs 1 through 121 hereof, as if fully set forth herein in their entirety.

123. Defendants have derived and/or are in possession of significant revenue, profits, and other benefits thereon stemming from their unauthorized and illegal use, storage, production, reproduction, distribution, performance, and/or otherwise commercial exploitation of the Bradcliffe Musical Works and derivative works of the Bradcliffe Musical Works in the form of the Unauthorized Red Tettemer/William Grant Derivative Works and

FIRST AMENDED COMPLAINT

Unauthorized Quaker City Mercantile/William Grant Derivative Works and from their fraudulent misrepresentations to Plaintiffs.

124.    Plaintiffs are entitled to a full and accurate accounting of all revenues generated by Defendants in connection with their use, storage, production, reproduction, distribution, performance, and/or otherwise commercial exploitation of any and all copies or derivatives of the Bradcliffe Musical Works, including the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works.

125.    Specifically, Plaintiffs are entitled to a full and accurate accounting of all revenues generated by Defendants Red Tettemer, Mod Op, and Quaker City Mercantile concerning their production of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works and their subsequent reproduction, distribution, performance, and commercial exploitation of these works on the radio, TV, online, social media, streaming, and elsewhere, including any and all advertising share revenues, such as YouTube ad revenues, or bonuses generated or received by them as a result of the creation and/or exploitation of these works.

126.    As to Defendant William Grant, Plaintiffs are entitled to a full and accurate accounting of all revenues generated by it in connection with all sales of Tullamore D.E.W. alcohol products or other Tullamore D.E.W. products during the time that the Unauthorized Red Tettemer/William Grant Derivative Works and/or Unauthorized Quaker City Mercantile/William Grant Derivative Works have been publicly distributed, performed, and/or commercially exploited via radio, TV, broadcasting, online, social media, streaming, or elsewhere in the U.S. and in other countries/territories/regions abroad.

127.    Plaintiffs are also entitled to a full and accurate accounting of all other revenues generated by Defendant William Grant, including advertising share revenues, such

40

FIRST AMENDED COMPLAINT

as YouTube ad revenues, generated or received by it in connection with the public distribution, performance, reproduction, and exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works via radio, TV, broadcasting, online, social media, streaming, and elsewhere.

128.    The amount of money due to Plaintiffs from Defendants resulting from their infringements and fraud is in excess of One Hundred Fifty Thousand Dollars ($150,000), but the precise amount is currently unknown to Plaintiff and cannot be reasonably ascertained without a full and complete accounting of Defendants' relevant books and records.  Due to the widespread nature of the infringing acts committed by Defendants at issue, it is not possible for Plaintiffs to ascertain a fixed sum that is currently owed to them unless a full and accurate accounting of all revenues generated from the aforementioned infringing acts is performed.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

a.  That Defendants, each of them, their respective agents, and anyone working in concert with Defendants and/or their agents, be permanently enjoined from copying, storing, performing, distributing, and/or otherwise exploiting the Bradcliffe Musical Works, Unauthorized Red Tettemer/William Grant Derivative Works, and Unauthorized Quaker City Mercantile/William Grant Derivative Works, or any derivatives thereof, in a manner that infringes the copyrights in the Bradcliffe Musical Works;

FIRST AMENDED COMPLAINT

b. That Plaintiff Bradcliffe be awarded all of Defendants' profits, both direct and indirect profits, and all of Plaintiff's actual damages and losses attributable to Defendants' infringements, the exact sum to be proven at the time of trial;

c. That Defendants Red Tettemer, Mod Op, and Quaker City Mercantile shall be required to provide an accounting of the total revenue generated by them concerning their creation/production of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City Mercantile/William Grant Derivative Works and their subsequent reproduction, distribution, performance, and commercial exploitation of these works on the radio, TV, broadcasting, online, social media, streaming, and elsewhere, including any and all advertising share revenues generated, such as YouTube ad revenues generated, or bonuses generated or received by them as a result of the creation and/or exploitation of these works.

d. That Defendant William Grant shall be required to provide an accounting of the total revenue generated by it in connection with all sales of Tullamore D.E.W. alcohol products or other Tullamore D.E.W. products during the time that the Unauthorized Red Tettemer/William Grant Derivative Works and/or Unauthorized Quaker City Mercantile/William Grant Derivative Works were publicly distributed, performed, and/or commercially exploited via radio, TV, broadcasting, online, social media, streaming, and elsewhere, in the U.S. and in any other country/territory/region throughout the world.

e. That Defendant William Grant shall be required to provide an accounting of the total revenue generated by it concerning its reproduction, distribution, performance, and commercial exploitation of the Unauthorized Red Tettemer/William Grant Derivative Works and Unauthorized Quaker City

FIRST AMENDED COMPLAINT

Mercantile/William Grant Derivative Works on the radio, TV, broadcasting, online, social media, streaming, and elsewhere, including any and all advertising share revenues generated, such as YouTube ad revenues generated, or other revenue generated or received by it as a result of the exploitation of these works, in the U.S. and in any other country/territory/region throughout the world.

f.  That Plaintiff Bradcliffe be awarded its actual damages and the profits of Defendants Red Tettemer, Quaker City Mercantile, and William Grant, or alternatively statutory damages of not less than $2,500.00 and up to $25,000.00 for each violation of 17 U.S.C. § 1202(a)(1) and (2) pursuant to 17 U.S.C. § 1203;

g.  That a constructive trust shall be imposed upon Defendants regarding such amounts and any other revenues or proceeds realized by Defendants, and each of them, through their infringement of Plaintiff's copyrights in the Bradcliffe Musical Works and violation of 17 U.S.C. § 1202(a)(1) and (2);

h.  That Plaintiffs be awarded damages resulting from Defendant Red Tettemer's fraud/intentional misrepresentations.

i.  That Plaintiff be awarded its attorneys' fees and costs under 17 U.S.C. § 505 and 17 U.S.C. § 1203(b).

j.  That Plaintiffs be awarded pre- and post-judgment interest as allowed by law; and

k.  That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

FIRST AMENDED COMPLAINT

## **JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: February 10, 2026                    By:    */s/ Alyssa M. Bruno*
Alyssa M. Bruno, Esq.
A. BRUNO LAW
*Attorney for Plaintiff Bradcliffe LLC and*
*Donald A. McCloskey*

FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of February 2026, a true and correct copy of the foregoing **PLAINTIFFS BRADCLIFFE LLC AND DONALD A. MCCLOSKEY'S AMENDED COMPLAINT** was filed electronically with the United States District Court for the Eastern District of Pennsylvania through the Court's CM/ECF system.  All parties may access this filing through that system.

**A.  BRUNO LAW**

By:    */s/ Alyssa M. Bruno*
Dated: February 10, 2026                Alyssa M. Bruno, Esq.
                                        *Attorney for Plaintiffs Bradcliffe LLC and*
                                        *Donald A. McCloskey*