## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRADCLIFFE LLC AND DONALD A. MCCLOSKEY,** | **CIVIL ACTION** |
| **Plaintiffs,** | |
| **v.** | **NO.  25CV6511** |
| **WILLIAM GRANT & SONS, INC., WILLIAM GRANT & SONS AMERICAS, LLC, WILLIAM GRANT & SONS US DISTILLERS LLC, WILLIAM GRANT & SONS USA CORP., WILLIAM GRANT & SONS, LTD., WILLIAM GRANT & SONS HOLDINGS LTD., WILLIAM GRANT & SONS (AME) LTD., WILLIAM GRANT & SONS BRANDS LTD., WILLIAM GRANT & SONS GLOBAL BRANDS LTD., RED TETTEMER, INC., MODOP, LLC, QUAKER CITY MERCANTILE, INC., AND DOES 1-10,** | |
| **Defendants.** | |

### MEMORANDUM OPINION

Tullamore D.E.W. is one of the most recognizable brands of Irish whiskey, with origins dating back to 1829.  One of its earliest advertising slogans was "Give every man his DEW," a phrase that still appears on some bottles today.  Donald A. McCloskey is a man who says that, despite creating music featured in advertisements for Tullamore D.E.W., he did not, in fact, get his due.

McCloskey and Bradcliffe LLC ("Bradcliffe"), an entity of which McCloskey is the sole owner, brought suit over the alleged theft and subsequent use of original musical works in a global advertising campaign for Tullamore D.E.W.  Bradcliffe asserts claims for direct copyright

1

infringement, contributory and vicarious copyright infringement, and accounting against various entities associated with the distiller of Tullamore D.E.W. [1], referred to herein as "William Grant," as well as several advertising agencies allegedly responsible for the infringing advertisements: Red Tettemer, Inc. ("Red Tettemer"), ModOp, LLC ("Mod Op"), and Quaker City Mercantile, Inc. ("Quaker City Mercantile").  Bradcliffe also asserts a claim for the provision and distribution of false copyright management information in violation of 17 U.S.C. § 1202(a) against William Grant, Red Tettemer, and Quaker City Mercantile, and a claim for common law fraud/intentional misrepresentation against Red Tettemer.  McCloskey separately asserts claims for common law fraud/intentional misrepresentation against Red Tettemer and accounting against all defendants.

The pending motions concern only some of those Defendants.  Mod Op moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6), while Red Tettemer moves to dismiss for failure to state a claim under Rule 12(b)(6).  In a separate motion, William Grant & Sons Americas, LLC, William Grant & Sons USA Corp., and William Grant & Sons US Distillers LLC (collectively, the "William Grant Defendants") move to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).[2]  For the reasons that follow, Red Tettemer and Mod Op's Motion will be granted in part and denied in part and the William Grant

---

[1] Specifically, Plaintiffs assert claims against William Grant & Sons, Inc., William Grant & Sons Americas, LLC, William Grant & Sons US Distillers LLC, William Grant & Sons USA Corp., William Grant & Sons Ltd., William Grant & Sons Holdings Ltd., William Grant & Sons (AME) Ltd., William Grant & Sons Brands Ltd., and William Grant & Sons Global Brands Ltd.

[2] William Grant & Sons, Inc., William Grant & Sons Ltd., William Grant & Sons Holdings Ltd., William Grant & Sons (AME) Ltd., William Grant & Sons Brands Ltd., William Grant & Sons Global Brands Ltd., and Quaker City Mercantile have not moved to dismiss.  Willaim Grant & Sons, Inc., and Quaker City Mercantile have each filed an answer.  William Grant & Sons Ltd., William Grant & Sons Holdings Ltd., William Grant & Sons (AME) Ltd., William Grant & Sons Brands Ltd. and William Grant & Sons Global Brands Ltd have not yet been served.

Defendants' Motion will be granted.

## I.    FACTUAL BACKGROUND[3]

In 2022, Red Tettemer, a Philadelphia advertising agency, invited McCloskey to help develop a potential social-media campaign for William Grant's Tullamore D.E.W. Irish whiskey brand.  McCloskey— a Philadelphia-based independent singer-songwriter known for his "eclectic and unique style of songwriting" and "a particular affinity" for traditional Irish folk music—had previously worked with Red Tettemer as a W-9 independent contractor.  McCloskey composed a song called "Tullamore Tullamore Tullamore Dew," which he recorded on an iPhone.  He later composed a second version, titled "Tullamore Tullamore Tullamore Dew Version #2," which was recorded in a studio.  Bradcliffe is alleged to be both the author and copyright claimant of each work, because McCloskey created the works as works made for hire for Bradcliffe.  The original composition and Version #2 are referred to collectively herein as the "Bradcliffe Musical Works."

Bradcliffe provided the Bradcliffe Musical Works to Red Tettemer for inclusion in the pitch to William Grant.  William Grant liked the songs and wanted to use them as the central feature of a campaign for Tullamore D.E.W.  Accordingly, Red Tettemer and William Grant entered into an agreement under which Red Tettemer would provide advertising and consultancy services for the campaign.  As part of that work, Red Tettemer produced a series of audio and audiovisual commercials for Tullamore D.E.W. featuring adaptations of the Bradcliffe Musical

---

[3] The following allegations, found in the Amended Complaint, are taken as true.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  That includes well-pleaded allegations made "upon information and belief."  *See Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir. 1965) ("On a motion to dismiss on the ground that the complaint does not state a claim on which relief can be granted, the rule is that the complaint must be viewed in the light most favorable to plaintiff and the truth of all facts well pleaded, admitted . . . includ[ing] facts alleged on information and belief.").

Works.  These included advertisements titled "Tullamore D.E.W. Anthem" and "Tullamore D.E.W. – Unwavering Whiskey in a Crazy World."  Bradcliffe invoiced Red Tettemer for the musical services it provided.

In August of 2022, before any of the advertisements had been publicly performed or distributed, Bradcliffe emailed Red Tettemer requesting that the parties enter into a synchronization license governing use of the Bradcliffe Musical Works.  In essence, such a license would have authorized the use of the musical works in audiovisual advertisements and ensured that Bradcliffe was compensated.  Those requests were dismissed.  McCloskey was later told that the agency had lost the William Grant account and that the advertisements incorporating Bradcliffe's music would not be used.

 That representation, according to Plaintiffs, proved false.  Although Bradcliffe never entered into a license or assignment agreement authorizing use of the compositions, Red Tettemer and William Grant allegedly copied, stored, reproduced, performed, distributed, and otherwise exploited the Bradcliffe Musical Works with the derivative advertisements incorporating them.  The advertisements appeared on radio, online, and through other media.  Plaintiffs point in particular to several advertising-industry articles promoting the collaboration between Red Tettemer and William Grant.  Those articles contained links through which the challenged advertisements could be viewed or heard.  They identified "Don McCloskey" as the composer of the music used in the Tullamore D.E.W. campaign.

In 2024, Mod Op acquired Red Tettemer.  After this acquisition, Mod Op continued commercially distributing and performing the advertisements through radio, online platforms,

4

social media, and other marketing channels.[4]

Plaintiffs did not discover Defendants' commercial use of the musical works until October 2023.  Nearly two years later, in August 2025, Bradcliffe sent Defendants detailed cease-and-desist letters concerning the alleged infringement.  For months thereafter, Defendants continued to distribute and perform the advertisements and other challenged works online, on radio and broadcast television, and through various streaming platforms.

## II.    DISCUSSION

### A.  Lack of Personal Jurisdiction

Mod Op and the William Grant Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss Plaintiffs' claims against them for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction," a threshold issue that must be resolved before the Court reaches the merits.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013).  As such, they must demonstrate with "reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987).

"Under Federal Rule of Civil Procedure 4(e), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).  The question of personal jurisdiction depends on: (1) whether there is "a

---

[4] William Grant also retained Quaker City Mercantile, another Philadelphia advertising and branding agency, to develop a further campaign for Tullamore D.E.W.  Quaker City Mercantile and William Grant then produced another series of audio and audiovisual advertisements allegedly derived from the Bradcliffe Musical Works. According to Plaintiffs, Quaker City Mercantile had access to those works because William Grant either forwarded the relevant sound recordings to it or otherwise made the compositions available.

statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state"; and (2) whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Id*. (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)).  Because Pennsylvania's long-arm statute authorizes personal jurisdiction over nonresidents to the "fullest extent allowed under the Constitution of the United States," 42 Pa. C.S. § 5322(b), the two inquiries merge into one. *See Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

With that in mind, the Due Process Clause allows for two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984).  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  A defendant is subject to specific jurisdiction if they "purposefully direct[ ]" their activities to the forum, the litigation "arise[s] out of or relate[s] to" at least one of those activities, and the exercise of jurisdiction comports with "fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks and citations omitted).

### i.    Mod Op

Mod Op first argues that Plaintiffs have failed to establish general personal jurisdiction. Plaintiffs do not address these arguments in their opposition briefs and therefore have waived any opposition. *See Diaz v. Progressive Advanced Ins. Co.*, 2020 WL 868133, at *2 (E.D. Pa. Feb. 21, 2020) ("Moreover, [Plaintiff] failed to respond to this argument in his brief, and the

6

Court therefore treats the argument as unopposed."); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp.3d 701, 712 (E.D. Pa. 2016) ("[B]y filing a response in opposition to [Defendant's] motion to dismiss that addressed some, but not all, of [Defendant's] arguments, abandoned those claims upon which she failed to make any substantive arguments, and those claims are therefore waived.").

Mod Op next argues that Plaintiffs have failed to establish specific personal jurisdiction. In particular, it contends that the Amended Complaint "does not identify a single contract signed by Mod Op in Pennsylvania, a single communication by Mod Op directed to Pennsylvania regarding the alleged acts or campaign, or a single decision made by Mod Op in Pennsylvania relating to the alleged infringement." It argues further that Plaintiffs' allegations that it commercially distributed and performed derivative versions of the Bradcliffe Musical Works after acquiring Red Tettemer are speculative because the Amended Complaint identifies "no date, no platform, no transfer document, no internal corporate integration step, and no forum-related act."

In response, Plaintiffs point to the allegation that "the Unauthorized Red Tettemer/William Grant Derivative Works were also eventually commercially distributed and performed by Defendant Mod Op through various marketing mediums, including radio, online, and social media, after it acquired Defendant Red Tettemer," including on Pennsylvania radio and television stations—specifically, Philadelphia sports-talk station 94.1 WIP. If supported, conduct of that kind could ordinarily be sufficient to establish specific personal jurisdiction. *See*, *e.g.*, *Wise v. Williams*, 2011 WL 2446303, at *5 (M.D. Pa. May 18, 2011) (finding personal jurisdiction where the defendants "marketed and distributed the [allegedly infringing] song in Pennsylvania via other means, including the sale of CDs, digital downloading, radio and

7

television airplay" because "Pennsylvania was directly targeted for sales, and defendants' actions are directly related to plaintiffs' claims of copyright infringement.").

At this stage, however, while a plaintiff is entitled to have all allegations taken as true and factual disputes resolved in their favor, *see Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018), a plaintiff may not "rely on the bare pleadings alone" and must "respond with actual proofs, not mere allegations." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). The declaration submitted by Plaintiffs in support of personal jurisdiction says nothing about whether Mod Op distributed or performed derivative versions of the Bradcliffe Musical Works in Pennsylvania.[5]

Plaintiffs do, however, maintain that they should be provided with the opportunity to take jurisdictional discovery. Indeed, jurisdictional discovery is appropriate under certain circumstances at the Court's discretion, *Doe v. Hesketh*, 15 F. Supp.3d 586, 601 (E.D. Pa. 2014) (citing *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)), to wit: where a "plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,'" *Toys "R" Us*, 318 F.3d at 456-58 (internal citations omitted) (finding, on the allegations present at the motion to dismiss, a lack of personal jurisdiction over the defendant, but reversing a lower court's denial of jurisdictional discovery where the plaintiff's request "was specific, non-frivolous, and a logical follow-up based on the information known to [the plaintiff]."), or "[w]here the plaintiff's claim is not clearly frivolous[.]" *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983). "[J]urisdictional

---

[5] The declaration only includes evidence of a Mod Op office located in Philadelphia and Mod Op's ownership and acquisition of Red Tettemer.

discovery [is] particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).  Here, Plaintiffs have alleged with reasonable particularity that Mod Op may have distributed the challenged advertisements through radio, online, and social-media channels after acquiring Red Tettemer.  Those allegations, although presently unsupported by competent evidence, suggest the possible existence of forum-related contacts directly connected to Plaintiffs' copyright claims. Jurisdictional discovery concerning Mod Op is therefore appropriate.[6]

### ii.    *William Grant Defendants*

The William Grant Defendants also argue that the court does not have personal jurisdiction over them because the Amended Complaint does not allege that they had sufficient contacts with Pennsylvania.[7]  In support, they submit a declaration from Shona Tennant, Senior Counsel for William Grant & Sons, Inc., who states that she is "familiar with which William Grant entity is responsible for the creation and distribution of advertising materials relating to Tullamore D.E.W. in the United States."  According to Tennant, "none of the Moving Defendants had any role in the creation, development, production, or distribution of the advertisements challenged in the [] Amended Complaint anywhere in the United States or

---

[6] Because Plaintiffs will be permitted to conduct jurisdictional discovery as to Mod Op, Mod Op's remaining grounds for dismissal will not be addressed at this time. Consideration of those arguments would be premature before personal jurisdiction has been established.  *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case.").

[7] Although the William Grant Defendants' Motion does not clearly distinguish between general and specific jurisdiction, Plaintiffs address only specific jurisdiction.  That the Court lacks general jurisdiction over the William Grant Defendants is therefore treated as uncontested.  *See*, *e.g. Hershey Springs Farm, LLC v. Crown Heights Meat Store, Inc.*, 2026 WL 700694, at *3 (E.D. Pa. Mar. 12, 2026) ("Since the Plaintiff does not contend that the Court has general jurisdiction over the Defendants, the Court will cite only to the averments addressing specific jurisdiction.").

abroad."

Plaintiffs respond by first identifying what they perceive to be gaps in Tennant's declaration. They contend that, although Tennant states that the William Grant Defendants did not create or distribute the challenged advertisements, she does not state that they conduct no business whatsoever in Pennsylvania. Plaintiffs maintain that personal jurisdiction may be premised on the William Grant Defendants' alleged sale and distribution of Tullamore D.E.W. products to Pennsylvania consumers and retailers, including consumers who purchased the products after viewing or hearing the challenged advertisements.

But Plaintiffs offer no evidence that any Moving William Grant Defendant sold or distributed Tullamore D.E.W. products in Pennsylvania. Tennant, by contrast, states that none of the William Grant Defendants "maintains an office in Pennsylvania," "employs personnel in Pennsylvania," "owns, leases, or maintains real property in Pennsylvania," "maintains bank accounts in Pennsylvania," "pay[s] taxes in Pennsylvania," or "is registered to do business in Pennsylvania." Plaintiffs' unsupported assertion that the William Grant Defendants sold products in Pennsylvania therefore does not establish the forum contacts necessary to support specific jurisdiction. *See, e.g.*, *Talbert v. Am. Water Works Co., Inc.*, 538 F. Supp.3d 471, 485 (E.D. Pa. 2021) ("Once the plaintiff's allegations are contradicted by an opposing affidavit, as they were here, the plaintiff must present similar evidence in support of personal jurisdiction.") (internal quotation marks and citation omitted).

Plaintiffs next contend that the "interconnectedness" of the William Grant entities permits the Pennsylvania contacts of William Grant & Sons, Inc.—specifically, its involvement with Pennsylvania advertising agencies in creating the challenged advertisements—to be

imputed to the William Grant Defendants.[8]

Courts generally address the imputation of one corporation's forum contacts to another in the context of a parent-subsidiary relationship.  *See, e.g.*, *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335 (1925); *Blackwell v. Marina Assocs.*, 2006 WL 573793 (E.D. Pa. Mar. 9, 2006); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp.2d 411 (E.D. Pa. 2005).  To impute a subsidiary's contacts to a parent corporation, a plaintiff must present prima facie evidence sufficient to overcome "the general rule that mere ownership of a subsidiary does not subject the parent corporation to personal jurisdiction in the state of the subsidiary."  *See Blackwell*, 2006 WL 573793, at *5.  Relevant considerations include "whether the subsidiary corporation played a part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded."  *Action Mfg. Co.*, 375 F. Supp.2d at 420-21.

Plaintiffs rely principally on annual reports issued by William Grant & Sons Ltd., the ultimate operating parent, which refer collectively to "the Group," present consolidated financial information, and describe the entities' operations as "intrinsically linked."  They also rely on the "Terms & Conditions" page of the Tullamore D.E.W. website, which states that references to "our," "us," "we," or the "company" are deemed to include William Grant & Sons Ltd. and its subsidiaries, affiliates, and associates.

From these materials, Plaintiffs infer that "William Grant & Sons Ltd. and the William Grant Defendants had the right and ability to control the infringing conduct by William Grant & Sons, Inc. that took place in Pennsylvania (i.e. the creation, promotion, distribution, and

---

[8] Defendant William Grant & Sons, Inc. does not dispute its role in the challenged advertisements.

11

performance of the infringing advertisements) as well as the infringing actions of the other Defendants." That inference is insufficient for several reasons.

First, Plaintiffs' own description of the corporate structure does not establish a parent-subsidiary relationship between William Grant & Sons, Inc. and any of the William Grant Defendants. Plaintiffs allege that William Grant & Sons Ltd. provides management services and is the parent company of both William Grant & Sons, Inc. and the William Grant Defendants. Thus, at most, Plaintiffs allege that William Grant & Sons, Inc. and the William Grant Defendants are affiliated entities under common ownership. Plaintiffs point to no case, and this Court can find none, that states common ownership alone permits the contacts of one affiliate to be imputed to another. *Cf. Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").

Second, the evidence on which Plaintiffs rely does not show that the entities disregarded their separate corporate identities or that William Grant & Sons, Inc. acted as the agent or alter ego of any Moving William Grant Defendant. References in consolidated reports to affiliated entities as a single group do not establish an alter-ego relationship. *See Action Mfg. Co.*, 375 F. Supp.2d at 423 ("[R]eferences in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship.") (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001)). Nor are shared branding, common names, unified marketing materials, or a corporate website describing related entities as a single team or group sufficient. *See Kovalev v. Lidl US, LLC,* 647 F. Supp.3d 319, 339 (E.D. Pa. 2022) ("[T]he following are not sufficient to establish personal jurisdiction over the nonresident, parent corporation: (1) a parent's ownership of a subsidiary; (2) a shared name

12

among the entities; (3) occupying the same office space; (4) issuing a "unified marketing image"; or (5) maintaining a company website noting that the companies "consider[ ] themselves a single team or group.").

Third, the allegations concerning the William Grant Defendants' possible Pennsylvania contacts are pleaded collectively with those of the other William Grant entities. But "Plaintiffs may not simply lump Defendants together to establish jurisdiction." *See Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, at *3 (E.D. Pa. June 1, 2020).

Plaintiffs therefore have not met their burden of establishing specific personal jurisdiction over the William Grant Defendants. Their request for jurisdictional discovery also will be denied. The Amended Complaint does not identify any specific conduct by a Moving William Grant Defendant directed toward Pennsylvania, any role played by such an entity in creating or distributing the challenged advertisements, or any facts suggesting that the corporate separateness of the William Grant entities was disregarded. Nor do Plaintiffs identify specific discovery they would seek that could cure those deficiencies. Instead, their request rests on the same generalized assertions of corporate interconnectedness that are insufficient to establish jurisdiction. *See Hadnagy v. Moss*, 2023 WL 114689, at *8 (E.D. Pa. Jan. 5, 2023) (denying jurisdictional discovery where the plaintiffs only made "summary requests for jurisdictional discovery"). Because Plaintiffs have neither established a prima facie basis for exercising specific personal jurisdiction over the William Grant Defendants nor shown that jurisdictional discovery is warranted, the claims against those Defendants will be dismissed for lack of personal jurisdiction.

## B. Failure to State a Claim

Red Tettemer separately moves under Federal Rule of Civil Procedure 12(b)(6) to

13

dismiss Plaintiffs' claims against it for direct copyright infringement, contributory and vicarious copyright infringement, provision and distribution of false copyright management information in violation of 17 U.S.C. § 1202(a), common law fraud/intentional misrepresentation, and accounting.  To survive such a motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  When analyzing a motion to dismiss, a complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief."  *Id.* at 210-11 (citation omitted).

### i.    *Copyright Statute of Limitations*

Red Tettemer first argues that Bradcliffe's copyright claims are limited by the Copyright Act's three-year statute of limitations.  *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.").  Because Plaintiffs filed this action on November 19, 2025, Red Tettemer contends that any claim based on a discrete act of infringement occurring before November 19, 2022, is time-barred and that the Amended Complaint identifies no infringing act occurring after that date.

14

Bradcliffe, however—with good reason—invokes the discovery rule. Under that rule, the limitations period does not begin to run "until the plaintiff learns of his cause of action or with reasonable diligence could have done so." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011). Importantly, a plaintiff is placed on inquiry notice when "storm warnings" provide "sufficient information of possible wrongdoing" to alert the plaintiff to potentially culpable conduct. *Brownstein v. Lindsay*, 742 F.3d 55, 70 (3d Cir. 2014).

Here, Bradcliffe alleges that it did not discover any unauthorized commercial use of the Bradcliffe Musical Works until October 2023. Red Tettemer argues that this allegation is implausible in light of its August 2022 refusal to enter into a synchronization license. But that refusal, standing alone, did not necessarily place Bradcliffe on notice of infringement, particularly because Red Tettemer allegedly represented that it had lost the William Grant account and that the advertisements would not be used. As alleged, the refusal to enter into a license did not amount to a "storm warning" that the works were nevertheless being or would be commercially exploited.

Red Tettemer also argues that the Amended Complaint alleges no affirmative act of infringement by it after November 19, 2022. That contention is likewise inconsistent with the pleadings. For example, the Amended Complaint alleges that Red Tettemer continued to distribute and perform the challenged advertisements online, on radio and broadcast television, and through streaming platforms for months after receiving Bradcliffe's cease-and-desist letters in August 2025. Each such act of alleged infringement constitutes a separate violation with its own accrual date. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) ("[W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation."). Thus, each alleged radio broadcast, television airing, online distribution,

15

or streaming performance within the limitations period also may support a timely claim.  Red

Tettemer's statute-of-limitations argument therefore does not warrant dismissal.

### ii.   Federal Rule of Civil Procedure 8

Red Tettemer next argues that the Amended Complaint should be dismissed under

Federal Rule of Civil Procedure 8.  Rule 8 requires "a short and plain statement of the claim

showing that the pleader is entitled to relief" sufficient to provide fair notice of the claims

asserted.  Fed. R. Civ. P. 8(a)(2).

First, Red Tettemer contends that dismissal is warranted because "the factual narrative

repeatedly uses the singular term 'Plaintiff' in a way that alternately suggests McCloskey,

Bradcliffe, or both, thereby obscuring who acted, who authorized, who relied, and who was

injured."  Even if the Amended Complaint is at times unclear in distinguishing between

Bradcliffe and McCloskey, Red Tettemer identifies no authority holding that such imprecision

warrants dismissal.  Indeed, the Amended Complaint meets the standard required by Rule 8.  It

identifies Bradcliffe as the author and copyright owner of the musical works at issue and

McCloskey as Bradcliffe's sole owner.  It also specifies which claims are asserted by Bradcliffe

and identifies the single claim asserted by McCloskey.  Accordingly, notwithstanding occasional

inconsistencies in the use of "Plaintiff" and "Plaintiffs," the Amended Complaint provides

adequate notice of which Plaintiff asserts each claim and of who owns the copyrighted works

and the exclusive rights at issue.  Red Tettemer's first Rule 8 argument therefore does not

warrant dismissal.[9]

---

[9] Red Tettemer also contends that, to the extent the Amended Complaint suggests that McCloskey retained ownership interests separate from Bradcliffe or that the exclusive rights in the musical works were divided between them, the pleading raises concerns under Federal Rule of Civil Procedure 19.  *See* Fed. R. Civ. P. 19(a)(1) ("A person . . . must be joined as a party if . . .  in that person's absence, the court cannot accord complete relief among

Second, Red Tettemer argues that the Amended Complaint relies on impermissible "group pleading" by asserting sweeping allegations against Defendants collectively.  Rule 8, however, requires only sufficient factual matter to permit the reasonable inference that each defendant "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Red Tettemer identifies no Third Circuit authority recognizing a categorical prohibition on what it terms "group pleading"—*i.e.*, allegations that multiple defendants undertook the same action in tandem. Indeed, "allegations levied against multiple defendants satisfy Rule 8 when 'there is no genuine uncertainty regarding who is responsible for what.'"  *Corbin v. Bucks Cnty.*, 703 F. Supp.3d 527, 533 (E.D. Pa. 2023) (citing *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013)).

The Amended Complaint alleges conduct specific to Red Tettemer, including its role in creating the allegedly infringing advertisements, its representation that it had lost the William Grant account, its refusal to enter into a synchronization license, and its alleged participation in distributing the challenged advertisements.  These allegations provide sufficient notice of the conduct attributed to Red Tettemer and the basis for the claims against it.  Its group-pleading argument therefore does not warrant dismissal.

### iii.     17 U.S.C. § 1202(a)

Red Tettemer next argues that Bradcliffe's claims under 17 U.S.C. § 1202(a) should be

---

existing parties.")  According to Defendants, the Amended Complaint's purported inconsistencies leave unclear whether McCloskey retained any independent ownership interest, whether he assigned all rights to Bradcliffe, or whether the exclusive rights were divided among multiple owners who would need to be joined.

That argument rests on a hypothetical not supported by the allegations.  The Amended Complaint does not allege that McCloskey retained any ownership interest separate from Bradcliffe or that ownership of the exclusive rights was divided.  Rather, it identifies Bradcliffe as the sole copyright claimant in the musical works and as the entity asserting the copyright-infringement and DMCA claims against Defendants.  There is therefore no apparent basis to conclude that any additional copyright owner should be joined under Rule 19.

dismissed. Section 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement" either "provide copyright management information that is false" or "distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). Copyright-management information ("CMI") includes "[t]he title and other information identifying the work," "[t]he name of, and other identifying information about, the author of a work," and, in the case of an audiovisual work, "the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work." *Id.* § 1202(c)(1)-(3), (5).

Bradcliffe alleges that Red Tettemer provided false copyright-management information in connection with several videos incorporating unauthorized derivative versions of the Bradcliffe Musical Works. Specifically, it alleges that Red Tettemer caused the names "Tullamore D.E.W.," "RTOP," and "RTO+P" to appear in connection with videos distributed through YouTube, Vimeo, Red Tettemer's website, and AdForum, including "Unwavering Whiskey in a Crazy World" and multiple versions of the "Tullamore D.E.W. Anthem." According to Bradcliffe, those designations falsely suggested that Red Tettemer or Tullamore D.E.W. owned or authored the music, while omitting Bradcliffe's authorship and ownership. Bradcliffe further alleges that Red Tettemer acted knowingly and with the intent to conceal and facilitate infringement, profit from the unauthorized derivative works, and represent to William Grant and the public that it possessed rights in the Bradcliffe Musical Works.

Red Tettemer responds that a credit identifying "RTOP" as the "Agency" responsible for a commercial is not CMI concerning Bradcliffe's musical compositions. It further argues that "[t]he mere presence of a brand name, channel name, or agency credit adjacent to a video does not constitute false CMI unless it purports to identify authorship or ownership of the plaintiff's

18

alleged work and is conveyed as such."

In this context, Red Tettemer is correct.  The challenged references to "RTOP," "RTO+P," and "Tullamore D.E.W." identify the advertising agency, brand, or source of the commercial as a whole; they do not purport to identify the author or owner of the underlying musical composition.  See, e.g., *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp.2d 920, 929 (N.D. Ill. 2013) ("Where the only CMI displayed by Techny appears on the website's footer, not on the works or images themselves, the only conclusion the Court can reach about the copyright notice at the bottom of Techny's www.giftsforyounow.com website is that it has some intellectual property rights in its own website, not that it is claiming ownership of a copyright to all of its products.").  That conclusion is reinforced by the materials themselves, which identify "Music: Don McCloskey."  Such an attribution is inconsistent with Bradcliffe's theory that Red Tettemer falsely represented itself or Tullamore D.E.W. as the author of the music.  Nor does the omission of Bradcliffe's name, standing alone, transform an otherwise accurate agency or brand credit into false CMI.  Because the alleged statements do not falsely identify the author or owner of the Bradcliffe Musical Works, the Section 1202(a) claim against Red Tettemer will be dismissed.

### iv.    *Actual Knowledge and Material Contribution*

Red Tettemer also argues, in conclusory fashion, that Bradcliffe's contributory-infringement claims should be dismissed because the Amended Complaint does not allege that Red Tettemer had actual knowledge of specific infringing activity when it occurred or that it materially contributed to another party's infringement.

A defendant may be contributorily liable where it "knowingly takes steps that are substantially certain to result in" direct infringement.  *Gordon v. Pearson Ed., Inc.*, 85 F.

19

Supp.3d 813, 821 (E.D. Pa. 2015) (citing, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007)).  The Amended Complaint plausibly alleges both knowledge and material contribution.  It alleges that Red Tettemer "was an active participant in producing the infringing Unauthorized Red Tettemer/William Grant Derivative Works and then oversaw whether and how those infringing commercials were publicly distributed, performed, and exploited by Defendant William Grant."  It further alleges that Red Tettemer transferred the Bradcliffe Musical Works to William Grant.  *See* Gordon, 85 F. Supp.3d at 822 (E.D. Pa. 2015) ("Defendant's actual transmission of the Photographs to the third parties suffices to constitute an active step that could have encouraged or materially contributed to the infringing conduct.").  The Amended Complaint also alleges that Red Tettemer knew it lacked authorization to use the Bradcliffe Musical Works because, for instance, it declined Bradcliffe's request to enter into a synchronization license.  *See*, *e.g.*, *Grand Upright Music Ltd. v. Warner Bros. Recs.*, 780 F. Supp. 182, 185 (S.D.N.Y. 1991) (holding that it was "clear that the defendants knew that they were violating the plaintiff's rights" where the evidence showed that the defendants had sent a letter seeking the plaintiff's "consent" to use the copyrighted work).  Taken as true, those allegations support the reasonable inference that Red Tettemer knew of the allegedly infringing use and materially contributed to its continuation.  Red Tettemer's argument therefore does not warrant dismissal.

### v.   Count IV Fraud

Red Tettemer first moves to dismiss Plaintiffs' common law fraud/intentional misrepresentation claim to the extent it is based on Red Tettemer's alleged misrepresentation that derivative versions of the Bradcliffe Musical Works would not be used commercially by Red Tettemer, William Grant, or any other entity because Red Tettemer had lost the account and the

Tullamore D.E.W. project would not proceed.  According to Red Tettemer, the claim fails because the Amended Complaint does not plausibly allege that it knew the representation was false when made.

This theory rests on an alleged promise concerning future conduct—namely, that the derivative works would not be used commercially.  Under Pennsylvania law, a promise to perform a future act generally does not support a fraud claim unless the speaker, at the time the promise was made, had no intention of performing it.  *See Wood v. R.R. Donnelley & Sons Co.*, 888 F.2d 313, 318 (3d Cir. 1989) (citations omitted) (noting that, under Pennsylvania law, mere broken "promises to do future acts do not constitute a valid fraud claim").

But Plaintiffs' theory is not merely that Red Tettemer later failed to keep a promise about future use.  The Amended Complaint alleges that Red Tettemer's representations were false because, "upon information and belief," Red Tettemer had already "entered into a contract with Defendant William Grant in which it purported to transfer the rights to the Bradcliffe Musical Works and any derivative thereof to Defendant William Grant, without Plaintiffs' consent or authorization."  Plaintiffs further allege that Red Tettemer's misrepresentations were "intentional" and were made to prevent Plaintiffs from discovering that a contract concerning the Bradcliffe Musical Works had been entered into and from pursuing the synchronization-license issue further.  In substance, Plaintiffs allege that Red Tettemer knew the Bradcliffe Musical Works would be used commercially, had a contract with William Grant concerning those works, and nevertheless told Plaintiffs that the works would not be used so that Plaintiffs would not investigate further. Taken as true, those allegations plausibly support the inference that Red Tettemer knew its statements were false when made.

Red Tettemer also argues that Plaintiffs' entire fraud claim fails under Federal Rule of

21

Civil Procedure 9(b).  Rule 9(b) provides that in alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "This generally requires a plaintiff to plead the who, what, when, and where details of the alleged fraud."  *Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network*, 2001 WL 41143, at *3 (E.D. Pa. Jan. 18, 2001) (internal citation and quotation marks omitted).  Here, Plaintiffs have alleged those circumstances.

Plaintiffs have done so here.  They identify two alleged misrepresentations: first, that Red Tettemer requested "splits" of the final Tullamore D.E.W. mixes for archival purposes when, in fact, it intended to provide those materials to William Grant; and second, that Red Tettemer represented that the Tullamore D.E.W. project was no longer moving forward and that the derivative works would not be used commercially.  Plaintiffs identify Red Tettemer as the speaker, McCloskey and Bradcliffe as the recipients, the subject matter of the alleged misrepresentations, and the purpose for which the statements were allegedly made.

Red Tettemer's Rule 9(b) argument largely repeats its broader challenge to the Amended Complaint's use of collective terms such as "Plaintiff" and "Defendants."  But as to the fraud claim, the Amended Complaint identifies "Defendant Red Tettemer" as the party that made the alleged misrepresentations and states that those misrepresentations were made to "Plaintiffs McCloskey and Bradcliffe."  That is sufficient at this stage to satisfy Rule 9(b).  Red Tettemer's motion to dismiss the fraud/intentional misrepresentation claim will therefore be denied.[10]

---

[10] Red Tettemer also argues that Plaintiffs' fraud claims are impermissibly duplicative of their copyright claims. Red Tettemer, however, provides no authority in support of that argument and has therefore forfeited it.  *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion such as the one made here . . . will be deemed waived."); Local Rule 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion.") (emphasis added); *see also United States v. Heatherly*, 985 F.3d 254, 270 (3d Cir. 2021) (treating failure to "develop[ ] . . . arguments properly" as forfeiture).

### vi.    *Accounting*

Red Tettemer also argues that Plaintiffs' standalone claim for accounting should be dismissed because Plaintiffs possess adequate remedies at law.  But. "because Plaintiffs are entitled to plead in the alternative, the fact that they have asserted other claims for damages in other counts of the Complaint does not bar this claim."  *Chaleplis v. Karloutsos*, 579 F. Supp.3d 685, 705 (E.D. Pa. 2022); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").  Thus, whether Plaintiffs possess an adequate remedy at law is not ripe for resolution at this stage.

Additionally, the Court declines to address at this time Red Tettemer's argument that Plaintiffs' accounting claim is expressly preempted by the Copyright Act.  "It has been suggested that the more appropriate vehicles for determining whether a claim is preempted are a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or a motion for summary judgment under Federal Rule of Civil Procedure 56."  *See Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 131 n.4 (3d Cir. 2018).

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____

**WENDY BEETLESTONE, C.J.**